STATE OF NORTH CAROLINA v. LAVERNE RAY IRWIN

No. 26

(Filed 6 October 1981)

1. Homicide § 21.6— felony murder—sufficiency of evidence

The State's evidence was sufficient to support findings by the jury that deceased died from a gunshot wound received during the course of an attempted armed robbery, that defendant fired the fatal shot, and that defendant was thus guilty of first degree murder under the felony murder rule, where it tended to show that defendant attempted to commit an armed robbery of a drug store; two shots were fired during the attempt; just prior to the second shot, defendant was seen pointing a pistol at the deceased; immediately thereafter, the deceased ran from the store calling for help and was seen falling inside a police station located across the street; an autopsy conducted within thirteen hours after the shooting revealed that deceased had been dead several hours and that death resulted from a gunshot wound to his right chest; the wound was caused by a .357 caliber bullet; and defendant had a .357 magnum pistol in his possession at the time of his arrest.

2. Criminal Law § 34.7— evidence of other crimes—competency to show intent and motive

In this prosecution for attempted armed robbery and felony murder of a drug store employee, an accomplice's testimony that defendant told him that he had obtained illegal drugs in Ohio by robbing drug stores in a manner similar to the attempted armed robbery in question was competent to show that defendant had the specific intent to rob the employee and to show defendant's motive for the attempted robbery.

### 3. Kidnapping § 1— meaning of "remove from one place to another"

As used in the kidnapping statute, G.S. 14-39(a), the phrase "remove from one place to another" requires a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony.

### 4. Kidnapping § 1.2— insufficient evidence of removal

The State's evidence was insufficient for the jury on the issue of defendant's guilt of kidnapping a drug store employee where it tended to show that defendant and an accomplice attempted an armed robbery of the store owner and the employee to obtain drugs, the accomplice forced the employee at knifepoint to walk from her position near the fountain cash register to the back of the store to the area of the prescription counter and safe, two shots were fired by defendant at the front of the store, one of which struck the owner, the accomplice then fled, and the employee was not touched or further restrained, since the employee's removal to the back of the store was an inherent and integral part of the attempted armed robbery and was insufficient to support a conviction for a separate kidnapping offense.

### 5. Criminal Law § 135.4— first degree murder—sentencing hearing—mitigating circumstances—plea bargain between State and codefendant

Evidence of a plea bargain and sentencing agreement between the State and a codefendant was irrelevant and properly excluded from the jury's consideration as a mitigating circumstance in a sentencing hearing in a first degree murder case, since such evidence had no bearing on defendant's character, record or the nature of his participation in the offense. G.S. 15A-2000(f)(9).

### 6. Criminal Law § 135.4— first degree murder—sentencing hearing—voluntary intoxication—impaired capacity

Voluntary intoxication by alcohol or narcotic drugs at the time of the commission of a murder does not constitute the mitigating factor of being under the influence of mental or emotional disturbance within the meaning of G.S. 15A-2000(f)(2); rather, voluntary intoxication to a degree that it affects defendant's ability to understand and to control his actions is properly considered as relating to the impaired capacity mitigating circumstance set forth in G.S. 15A-2000(f)(6).

### 7. Criminal Law § 135.4— felony murder conviction—sentencing hearing—submission of aggravating circumstance as to pecuniary gain

The trial court properly submitted the aggravating circumstance as to whether a murder was committed for pecuniary gain in a trial in which defendant was convicted of first degree murder under the theory that the murder was committed in the perpetration of an attempted armed robbery, there being no merit to defendant's contention that he was entitled to an assumption that his culpability in the murder was the lowest possible to support a verdict of guilty of felony murder and that submission of the aggravating circumstance of pecuniary gain entitled the State to relitigate the question of intentional killing.

**8. Criminal Law § 135.4 — first degree murder — sentencing hearing — kidnapping as aggravating circumstance — prejudicial error**

In a sentencing hearing in a first degree murder case, the trial court committed prejudicial error in submitting the aggravating circumstance as to whether the murder was committed while defendant was an aider or abettor in the commission of the crime of kidnapping where the evidence was insufficient to support a conviction for kidnapping, the jury recommended imposition of the death sentence upon finding the kidnapping and pecuniary gain aggravating circumstances, and the appellate court is unable to conclude that if the issue as to kidnapping had not been submitted, the jury would have found that the pecuniary gain circumstance was sufficiently substantial to justify imposition of the death penalty.

Justice MEYER did not participate in the consideration or decision of this case.

APPEAL by defendant from judgments of *Bruce, J.,* entered at the 24 September 1980 Criminal Session, WAYNE Superior Court.

Upon pleas of not guilty defendant was tried on bills of indictment, proper in form, charging him with first-degree murder, attempted armed robbery, conspiracy and kidnapping.

The jury returned verdicts of guilty of first-degree murder under the felony murder rule, attempted armed robbery and kidnapping. The court then conducted a sentencing hearing pursuant to G.S. 15A-2000, *et seq.* The jury recommended imposition of the death sentence.

The court entered judgment as recommended by the jury on the murder charge. On the kidnapping charge, the court entered judgment imposing a prison sentence of 25 years to begin at the expiration of the sentence on the murder charge. On motion of defendant, the verdict on the attempted armed robbery count was set aside.

Defendant appealed from the judgments. Pursuant to G.S. 7A-31(a) we allowed defendant's motion to bypass the Court of Appeals in the kidnapping case.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Isaac T. Avery, III and Assistant Attorney General Grayson G. Kelley, for the State.*

*Herbert B. Hulse for defendant-appellant.*

BRITT, Justice.

### PHASE I — GUILT DETERMINATION

#### A. *Felony-Murder*

[1]  Defendant assigns as error the trial court's denial of his motion to dismiss the charge of first-degree murder based on the felony murder rule. He argues that the evidence was not sufficient to support a verdict based on that rule. There is no merit in this assignment.

G.S. 14-17 provides in pertinent part: "A murder . . . which shall be committed in the perpetration or attempted perpetration of any . . . robbery . . . committed or attempted with the use of a deadly weapon, shall be deemed to be murder in the first degree, . . . ."

The evidence presented by the state tended to show that:

On the evening of 10 November 1980, around 8:00 p.m., defendant Laverne Irwin and an accomplice, Michael Harvey, entered the Fremont Drug Store in Fremont, N.C. The drug store is composed of one main room with a fountain counter on one side and a prescription counter at the back. Also in the rear of the store is an office and a prescription room.

Two other persons were present in the store that night: the owner, Jesse Stewart, and an employee, Ms. Sasser. Defendant and Harvey entered the store and wandered about for several minutes. Defendant then approached Mr. Stewart, who was standing near the front of the store, handed him a note and pulled out a pistol. The note instructed "do what I say and no one gets hurt." It then listed certain drugs that defendant demanded. At this point, Harvey walked over to the fountain cash register where Ms. Sasser was standing, drew a knife and forced her to walk toward the back of the store to the general area of the prescription counter. As they moved toward the back a shot was fired. Ms. Sasser testified that at the sound of the gunshot she looked in the direction of defendant and Mr. Stewart. Mr. Stewart was on his knees but apparently unhurt. Harvey, who testified for the state as part of a plea bargain arrangement, stated that Mr. Stewart was standing. After this first shot, Harvey and Ms.

Sasser proceeded to the back of the store and Harvey had Ms. Sasser sit on the step to the prescription room.

Ms. Sasser testified that shortly thereafter, the bell on the front door rang twice. Almost simultaneous with the ring of the bell Ms. Sasser heard a second gunshot which she thought came from outside the building. When she was able to look, defendant and Mr. Stewart had gone.

With respect to the second shot, Harvey testified that he saw the flash from defendant's gun and heard a bang. He noted that just before seeing the flash, defendant had the gun pointed at Mr. Stewart. After the shot, Mr. Stewart yelled for help and ran from the store with his hands in the air. At this point Harvey fled. As he ran down the street he saw Mr. Stewart enter the police station (across the street from the drug store) and fall inside. This was possible because the front of the station has double glass doors.

The medical examiner's testimony indicated that Mr. Stewart died from a gunshot wound to his right chest. When the examiner autopsied the body, around 9:00 a.m. the following morning, he determined that Mr. Stewart had been dead for some time. He estimated that the deceased lived from five to forty-five minutes after receiving the wound.

The state offered no further evidence of what happened to Mr. Stewart from 8:15 p.m. Saturday when he was seen entering the police station, until 9:00 a.m. Sunday when the autopsy was performed.

Defendant had a .357 magnum Ruger Blackhawk pistol in his possession at the time of his arrest. A ballistics expert testifying for the state said that the bullets recovered from Stewart's body came from the same class of firearms as defendant's pistol but a positive identification of that pistol as the murder weapon could not be made.

On a motion to dismiss on the grounds of insufficiency of the state's evidence, the question for the court is whether there is substantial evidence of each element of the crime charged and that defendant did in fact commit it. *State v. Riddle*, 300 N.C. 744, 268 S.E. 2d 80 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). The substantial evidence test requires that the evidence

must be existing and real, not just seeming and imaginary. *State v. Powell, supra; State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979). There must be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Fletcher,* 301 N.C. 709, 272 S.E. 2d 859 (1981); *State v. Smith,* 300 N.C. 71, 265 S.E. 2d 164 (1980).

In evaluating the motion, the trial judge must consider the evidence in the light most favorable to the state, allowing every reasonable inference to be drawn therefrom. *State v. Smith, supra; State v. Thomas,* 296 N.C. 236, 250 S.E. 2d 204 (1978). When so considered, if the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the defendant's perpetration thereof, the motion should be allowed. *State v. Brown,* 300 N.C. 41, 265 S.E. 2d 191 (1980); *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). However, if a reasonable inference of defendant's guilt can be drawn from the evidence, then it is the jury's decision whether such evidence convinces them beyond a reasonable doubt of defendant's guilt. *State v. Powell, supra; State v. Thomas, supra.*

Applying the rules set forth above to the present case we think that substantial evidence was introduced by the state to support a reasonable inference that Mr. Stewart died from a gunshot wound received during the course of an attempted armed robbery and that defendant fired the fatal shot.

Defendant attempted to commit an armed robbery of the Fremont Drug Store. During the attempt two shots were fired. Just prior to the second shot, defendant was seen pointing a pistol at the deceased. Immediately thereafter, the deceased ran from the store calling for help, and was seen falling inside the police station located across the street. An autopsy conducted within thirteen hours of the shooting revealed that deceased had been dead several hours and that death resulted from a gunshot wound to his right chest. The wound was caused by a .357 caliber bullet and defendant had a .357 magnum pistol in his possession at the time of his arrest. The lack of the state's evidence as to exactly what time and precisely where Mr. Stewart died does not reduce the jury's finding of guilt to mere conjecture where, as here, evidence adequate to support their conclusion was presented.

B. *Attempted Armed Robbery*

**[2]**   Defendant assigns as error the admission of evidence tending to show that he had committed other crimes. There is no merit in this assignment.

Harvey testified on redirect examination to the effect that defendant told him that he had obtained illegal drugs in Ohio by robbing drug stores in a manner similar to the attempted armed robbery in Fremont.

In North Carolina, evidence of other crimes by a defendant on trial is not admissible where its only relevancy to the crime charged is its tendency to show defendant's disposition to commit a crime of the nature of the one for which he is on trial. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979); *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954); 1 Stansbury's N.C. Evidence (Brandis Rev. 1973) § 91, pg. 289. However, if such evidence tends to prove any other relevant fact it will not be excluded merely because it shows guilt of another crime. *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551 (1979); *State v. Barfield, supra;* 1 Stansbury's N.C. Evidence (Brandis Rev. 1973) § 91, pp. 289-90.

The instances in which other crimes evidence is considered relevant are contained in the well-established exceptions to the general rule listed in *State v. McClain, supra.* We perceive at least two of these exceptions applicable to the case at bar.

1. "Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused. (Citations omitted.)" *State v. McClain, supra,* at 175.

Defendant was charged with an attempted armed robbery in violation of G.S. 14-87. One of the elements of an attempt to commit a crime is that the defendant must have the intent to commit the substantive offense. *State v. Smith,* 300 N.C. 71, 265 S.E. 2d 164 (1980). An attempted armed robbery occurs when a person with the requisite intent does some overt act calculated to unlawfully deprive another of personal property by endangering or threatening his life with a firearm. *State v. May,* 292 N.C. 644,

235 S.E. 2d 178 (1977). *State v. Price,* 280 N.C. 154, 184 S.E. 2d 866 (1971).

As part of its burden of proof, the state was required to show that defendant had the specific intent to rob Mr. Stewart. The acid test of the admissibility of other crimes evidence is its logical relevance to the particular excepted purposes for which it is sought to be introduced. *State v. McClain, supra.* Evidence that defendant had committed several previous robberies of drug stores in Ohio is clearly relevant on the issue of his intent that night at the Fremont Drug Store.

2. "Where evidence tends to prove a motive on the part of the accused to commit the crime charged, it is admissible, even though it discloses the commission of another offense by the accused. (Citations omitted.)" *State v. McClain, supra,* at 176.

The state's evidence tended to show that defendant was a heavy drug user. Harvey testified to the effect that defendant had obtained some of his drugs by armed robberies of stores in Ohio. This testimony was directly relevant to defendant's motive in the attempted armed robbery of the Fremont Drug Store, and therefore properly admitted into evidence.

Defendant next assigns as error the trial court's denial of his request for instructions as to the scrutiny of the testimony of an accomplice. Defendant requested that the jury be instructed that "the rule of scrutiny applies to the testimony of an accomplice whether such testimony be supported or unsupported by other evidence in the case."

An accomplice testifying for the state is generally considered an interested witness. Upon timely request, a defendant is entitled to an instruction that the testimony of the accomplice should be carefully scrutinized. *State v. Abernathy,* 295 N.C. 147, 244 S.E. 2d 373 (1978); *State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976). However, the court is not required to charge in the exact language of the request but need only give the instruction in substance. *State v. Abernathy, supra; State v. Bradsher,* 49 N.C. App. 507, 271 S.E. 2d 915 (1980).

In the present case, the trial judge instructed the jury as follows:

If you find that the witness, Michael Richard Harvey was an accomplice in the commission of the crime charged in this case, or that he testified in whole or in part under an agreement with the prosecutor for a charge reduction or sentencing consideration in exchange for his testimony, or both, you should examine his testimony with great care and caution in deciding whether to believe him. If after doing so, you believe the testimony of Michael Richard Harvey in whole or in part, you should treat what you believe the same as any other believable evidence.

We think that the trial court fairly and accurately instructed the jury on the rule of scrutiny of accomplice testimony. The instruction substantially complies with defendant's request. Furthermore, the instruction given has been approved in earlier decisions of this court. *State v. Hairston,* 280 N.C. 220, 185 S.E. 2d 633 (1972). We find no merit in defendant's assignment.

C. *Kidnapping*

Defendant assigns as error the trial court's denial of his motion to dismiss the charge of kidnapping. This assignment has merit.

The indictment charges defendant with kidnapping Ms. Sasser by removing her from one place to another and restraining her for the purpose of facilitating an armed robbery. The trial judge instructed the jury on the element of removal only, thus withdrawing the issue of restraint from jury consideration. Our discussion, therefore, will be limited to the meaning of the phrase "remove from one place to another" as used in G.S. 14-39(a).

G.S. 14-39(a), effective 1 July 1975, provides:

(a) Any person who shall unlawfully confine, restrain *or* remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal guardian of such person, shall be guilty of kidnapping if such confinement, restraint, *or* removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person. (Emphasis added.)

The legislature, in enacting this statute, eliminated asportation of the victim as an essential element of kidnapping. Our previous analysis of the statute led us to conclude that the intent of the legislature was "to make resort to a tape measure or stop watch unnecessary in determining whether the crime of kidnapping has been committed." *State v. Fulcher*, 294 N.C. 503, 522, 243 S.E. 2d 338 (1978).[1]

In *State v. Fulcher, supra,* we recognized that construction of the statute could present problems of constitutional magnitude; specifically, violation of the constitutional prohibition against double jeopardy. Consequently, we followed the venerable principle of statutory interpretation that if it is possible to reasonably construe a statute so as to avoid constitutional doubts, a court should adopt that construction. *Califano v. Yamasaki,* 442 U.S. 682, 61 L.Ed. 2d 176, 99 S.Ct. 2545 (1979); *U.S. v. Bradley,* 418 F. 2d 688 (4th Cir. 1969); *Matter of Arthur,* 291 N.C. 640, 231 S.E. 2d 614 (1977).

*Fulcher* involved an interpretation of the term "restrain" as used in G.S. 14-39(a). Pursuant to the above principle of statutory construction we held that it was not the legislature's intent in enacting G.S. 14-39(a) to make a restraint which was an inherent, inevitable element of another felony, such as armed robbery or rape, a distinct offense of kidnapping thus permitting conviction and punishment for both crimes. To have construed the statute otherwise would allow a defendant to be punished twice for essentially the same offense, violating the constitutional prohibition against double jeopardy.

---

1. One commentator has noted, however, that: "Kidnapping as now defined overlaps other crimes for which the prescribed punishment is less severe. This creates a very real potential for prosecutorial abuse of discretion by allowing imposition of a more severe punishment in circumstances which do not warrant it. Slaughter, "Kidnapping in North Carolina — A Statutory Definition for the Offense", 12 Wake Forest Law Review 434 (1976).

[3]   In accordance with our analysis of the term "restraint", we construe the phrase "removal from one place to another" to require a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony. To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy. In an armed robbery, for example, punishment for two offenses would be sanctioned if the victim was forced to walk a short distance towards the cash register or to move away from it to allow defendant access. Under such circumstances the victim is not exposed to greater danger than that inherent in the armed robbery itself, nor is he subjected to the kind of danger and abuse the kidnapping statute was designed to prevent. *State v. Dix*, 282 N.C. 490, 193 S.E. 2d 897 (1972). We now turn to the application of these principles to the facts in the case at bar.

[4]   The evidence for the state is sufficient to support a finding that Harvey forced Ms. Sasser at knifepoint to walk from her position near the fountain cash register to the back of the store in the general area of the prescription counter and safe. During this time two shots were fired by defendant at the front of the store, causing Harvey to flee. Ms. Sasser was not touched or further restrained. All movement occurred in the main room of the store.

Ms. Sasser's removal to the back of the store was an inherent and integral part of the attempted armed robbery. To accomplish defendant's objective of obtaining drugs it was necessary that either Mr. Stewart or Ms. Sasser go to the back of the store to the prescription counter and open the safe. Defendant was indicted for the attempted armed robbery of both individuals. Ms. Sasser's removal was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense.

## PHASE II — SENTENCING

[5]   Defendant assigns as error the trial court's exclusion at the sentencing hearing of the plea bargain and sentencing agreement between the state and co-defendant Larry Joseph Collen.

Collen pled guilty to second-degree murder and conspiracy to commit armed robbery in return for a sentence of life imprison-

ment plus five years, the sentences to run consecutively. Defendant was tried and convicted for first-degree murder, attempted armed robbery and kidnapping and received a sentence of death.

Defendant's contention raises the issue of whether the plea bargain and sentencing agreement of a co-defendant is a mitigating circumstance under G.S. 15A-2000(f)(9).

At the outset we note that disparate sentences for co-defendants are not unconstitutional. *State v. Atkinson*, 298 N.C. 673, 259 S.E. 2d 858 (1979). A definition of mitigating circumstance approved by this court is a fact or group of facts which do not constitute any justification or excuse for killing or reduce it to a lesser degree of the crime of first-degree murder, but which may be considered as extenuating, or reducing the moral culpability of the killing, or making it less deserving of the extreme punishment than other first-degree murders. *State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788 (1981).

The U.S. Supreme Court has held that any aspect of defendant's character, record or circumstance of the particular offense which defendant offers as a mitigating circumstance should be considered by the sentencer. *Lockett v. Ohio*, 438 U.S. 586, 57 L.Ed. 2d 973, 98 S.Ct. 2954 (1978). However, evidence irrelevant to these factors may be properly excluded by the trial court. *Lockett v. Ohio, supra*, p. 604, n. 12.

Applying the rule in *Lockett* to the present case, we hold that the evidence of the plea bargain and sentencing agreement between the state and a co-defendant was irrelevant and properly excluded from the jury's consideration as a mitigating factor. Such evidence had no bearing on defendant's character, record or the nature of his participation in the offense. In fact, defendant was himself the triggerman, and therefore the most culpable of the participants. Further, G.S. 15A-2000(d) provides for review by this court to ensure that a death sentence, when imposed, is not excessive or disproportionate to the penalty imposed in similar cases.

[6] Defendant contends by his next assignment of error that the trial court erred in its instructions to the jury on the mitigating factor of being under the influence of mental or emotional disturbance.

At the sentencing hearing, defendant offered evidence tending to show that he had intravenously injected 800 ml of Tuinol, a central nervous system depressant, approximately two hours before the attempted armed robbery. He had also consumed an undetermined quantity of beer that afternoon. There was expert medical testimony to the effect that given the ingestion of the above substances, the capacity of the defendant to conform his conduct to the requirements of the law would be impaired.

Defendant argues that the trial judge should have reviewed defendant's evidence on intoxication when he instructed the jury on the mitigating factor of being under the influence of a mental or emotional disturbance.

The North Carolina death penalty statute is substantially similar to the American Law Institute Model Penal Code.[2] We find the Code's commentary as to the pertinent mitigating factors helpful. According to the commentary, the provisions for mental or emotional disturbance deals with imperfect provocation; that situation where such disturbance is not subject to reasonable explanation as would reduce a first-degree murder charge to second-degree murder or manslaughter, but may be weighed against imposition of the death penalty. American Law Institute, Model Penal Code and Commentaries, § 210.6, p. 138 (1962).

Defendant's evidence of intoxication was more appropriately related to the law on the mitigating factor of impaired capacity. G.S. 15A-2000(f)(6).[3] The Model Penal Code Commentary on impaired capacity states that this section encompasses impairment or incapacity resulting from voluntary intoxication. Model Penal Code, *supra*, p. 138.

In the present case, defendant's evidence tended to show that he was in a state of voluntary intoxication. We hold that

---

2. G.S. 15A-2000(f)(2) provides as a mitigating circumstance that "The capital felony was committed while defendant was under the influence of mental or emotional disturbance." The Model Penal Code, § 210.6(4)(b) reads ". . . under the influence of *extreme* mental or emotional disturbance." (Emphasis added.)

3. G.S. 15A-2000(f)(6) provides as a mitigating circumstance that "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired." The Model Penal Code § 210.6 (4)(g) would add "impaired as a result of mental disease or defect or intoxication."

voluntary intoxication by alcohol or narcotic drugs at the time of the commission of a murder is not within the meaning of a mental or emotional disturbance under G.S. 15A-2000(f)(2). Voluntary intoxication, to a degree that it affects defendant's ability to understand and to control his actions, *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979), is properly considered under the provision for impaired capacity, G.S. 15A-2000(f)(6).

The trial judge in the case at bar correctly related defendant's evidence on intoxication to the law on impaired capacity. Defendant's contention is therefore without merit.

[7] Defendant next objects to the submission of the aggravating circumstance that the murder was committed for pecuniary gain.

Defendant was convicted of first-degree murder under the felony murder rule. G.S. 14-17. Defendant argues that because the jury was instructed not to answer the issues as to second-degree murder or manslaughter, he is entitled to an assumption that his culpability in the murder of Mr. Stewart was the lowest possible to support a verdict of guilty of felony murder. Based on this, he further contends that submission of the aggravating circumstance of pecuniary gain entitled the state to relitigate the question of intentional killing.

It is well-established in North Carolina that when the law and evidence justify the use of the felony murder rule, the state is not required to prove premeditation and deliberation, nor do the lesser offenses of second-degree murder or manslaughter need be submitted to the jury unless there is evidence to support such a finding. *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976).

There is no evidence in the record of the present case that would support a finding of either second-degree murder or manslaughter. Defendant went to the Fremont Drug Store with the intention of committing armed robbery. During the course of the robbery he fired his weapon twice. One of those shots inflicted a fatal wound on Mr. Stewart. Furthermore, the gun was a single action revolver and had to be cocked after each firing. We reject defendant's contention that he is entitled to an assumption of the lowest degree of culpability. Such an assumption, if allowed at all, would have to be based on evidence that the gun was accidentally fired. There is no evidence in the record to support such a theory.

Defendant's second argument is also without merit. Submission of the aggravating factor of pecuniary gain does not relitigate the question of intentional killing or any element of the offense of first-degree murder under the felony murder rule. Our decision in *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981) is on point. In *Oliver*, defendants were convicted of felony murder, with the underlying felony being armed robbery. This court held that the circumstance of pecuniary gain was not an essential element of the capital offense of felony murder. "This circumstance examines the motive of the defendant rather than his acts. While his motive does not constitute an element of the offense, it is appropriate for it to be considered on the question of his sentence." *Id.* at 62.

In the present case, as in *Oliver*, it was the hope of pecuniary gain that provided the impetus for the killings. The aggravating circumstance of pecuniary gain will almost always be appropriately submitted to the jury where a murder is committed during the course of an armed robbery. Pecuniary gain was, therefore, properly submitted to the jury for their consideration during sentencing.

[8] The last assignment of error that we consider is that the trial court erred in submitting kidnapping as an aggravating circumstance. This assignment has merit.

Earlier in this opinion we held that the evidence was insufficient to support a conviction for kidnapping. In light of that finding, the aggravating circumstance of kidnapping should not have been submitted to the jury at the sentencing hearing. The question then arises, was the error prejudicial to defendant?

In *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979), in answering this question in that case we held that the test is whether there is a *reasonable possibility* that the erroneous submission of an aggravating circumstance tipped the scales in favor of the jury finding that the aggravating circumstances were "sufficiently substantial" to justify imposition of the death penalty. *Ibid.* 29.

In the case at hand issues were submitted as to whether the murder was committed (1) for the purpose of avoiding a lawful arrest, (2) while defendant was an aider or abettor in the commis-

sion of the crime of kidnapping, or (3) for pecuniary gain. The jury answered the first issue in favor of defendant and the other two issues against him. We are unable to conclude that if the issue as to kidnapping had not been submitted, the jury would have found that the "pecuniary gain" circumstance was sufficiently substantial to justify imposition of the death penalty. That being true, we conclude that there must be a new trial on the sentencing phase.

The result is: We find no error in defendant's trial for attempted armed robbery and in the guilt determination phase of his trial for first-degree murder. The judgment entered in the kidnapping case is reversed. The judgment imposing a death sentence in the murder case is vacated and the cause is remanded to the Superior Court for a new sentencing hearing and an appropriate judgment predicated thereon.

Attempted armed robbery case: No error.

Kidnapping case: Reversed.

Murder case: Partial new trial.

Justice MEYER did not participate in the consideration or decision of this case.