STATE OF NORTH CAROLINA
v.
ANTHONY L. GLADDEN.
No. COA05-174
North Carolina Court of Appeals
Filed February 21, 2006
This case not for publication
Cumberland County No. 02 CRS 65836, 65837.
Attorney General Roy Cooper, by Assistant Attorney General C. Norman Young, Jr., for the State.
Richard E. Jester for defendant-appellant.
ELMORE, Judge.
Anthony L. Gladden (defendant) was charged with the offenses of robbery with a dangerous weapon, first degree kidnapping, felony conspiracy, and assault with a deadly weapon inflicting serious injury in indictments issued on 24 June 2003. Defendant was tried in Cumberland County Superior Court, with Judge Gregory A. Weeks presiding. At trial, the State's evidence tended to show the following: Grace Over by (the victim) was 74 years old at the time of trial and, prior to 8 November 2002, had worked at Hamont Cleaners in Eureka Springs. On 8 November 2002 the victim arrived at the store at approximately 8:00 a.m. The victim was alone, as her husband was preparing to arrive later to pick up money to bring to the bank. Between 9:00 and 9:30 a.m., a man came into the storewearing a sweater with a hood. The man ordered her to open the safe. When the victim replied that she did not have a safe, he pulled out a gun and pointed it between her eyes.
The victim testified that another man then appeared with a knife. The man with the knife jumped across the counter and grabbed her by the waist. He dragged her across the floor before she was able to break out of his grip. The man grabbed her again and threw her against a pipe that held up clothing racks. The victim was knocked unconscious for an unknown period of time. When she recovered, the victim called the sheriff's department. The victim was transported to Cape Fear Valley Hospital and examined. She suffered two or three fractured ribs and also experienced post-traumatic stress disorder. The victim testified that around one thousand dollars was missing from the store and also money from her pocketbook.
Faith Trogdon testified that she was a deputy sheriff for the Cumberland County Sheriff's Department. Deputy Trogdon took photographs and measurements at Hamont Cleaners and, based upon information from the victim, determined that the victim was dragged from the cash register to the clothing racks for a distance of eleven feet and thrown a distance of seven feet.
Antonio Johnson testified that he had been charged with the 8 November 2002 robbery and reached a plea agreement with the State in which he agreed to testify truthfully about defendant's role. Mr. Johnson stated that in exchange for his testimony and pleading guilty to conspiracy to commit armed robbery and assault with adeadly weapon inflicting serious injury, the State dismissed the charges of robbery with a dangerous weapon and first degree kidnapping. Mr. Johnson testified that he met defendant in October of 2002 and that defendant was not working at that time; defendant's girlfriend was the sole supporter of their four or five children. Mr. Johnson observed the power shut off at defendant's residence a few separate times when he was there visiting. During the week before 8 November 2002, defendant approached Mr. Johnson about assisting him in a robbery of Hamont Cleaners. Mr. Johnson testified that he just shrugged it off. The day before the robbery, defendant asked Mr. Johnson, "Are you still going to do this lick with me?" Mr. Johnson stated that he just walked away. On the morning of 8 November defendant arrived at Mr. Johnson's residence at 8:45 a.m. to ask if he was ready to "do this lick for me." Mr. Johnson testified that he followed defendant because he was worried that defendant or someone else would break into his home if he did not agree to go. Defendant gave Mr. Johnson a chrome gun and carried an army style knife himself. The two men walked over to Hamont Cleaners and then stood by the side of the building for a few minutes to see if anyone was going in or out. Defendant entered the store first, and Mr. Johnson walked in about a minute later. Mr. Johnson pointed the gun at the victim, and defendant jumped over the counter and grabbed her. Defendant instructed Mr. Johnson to get the money from the cash register. When the victim moved forward towards the cash register, defendant pulled her back. Defendant then picked the victim up and carriedher to the side of the store while she was screaming. Mr. Johnson, without taking any money, exited through the back door and ran toward a dirt road. Defendant followed behind him with a blue bank bag and some change.
Ms. Batwa Allen testified that in November of 2002 she was a clerk at the Quick Stop, a gas station located in close proximity to Hamont Cleaners. Ms. Allen stated that she knew defendant and that three or four days before 8 November 2002 defendant came into the Quick Stop and asked her, "What would you do if I robbed you?" Ms. Allen replied that she would send the police after him. She testified that she thought defendant was joking and did not take what defendant said seriously. Lauralyn Swinney testified that she worked at the Quick Stop and that she knew defendant and Mr. Johnson. On the morning of 8 November 2002 she and her husband were outside the Quick Stop when they saw Mr. Johnson and defendant walk by. When Ms. Swinney and her husband left the Quick Stop and drove past Hamont Cleaners, she saw Mr. Johnson and defendant standing outside with their backs against the wall and looking around. Ms. Swinney remarked to her husband, "What the hell they doing over there?" Approximately 45 minutes later, Ms. Swinney and her husband passed by Hamont Cleaners again and saw squad cars there.
Defendant's evidence tended to show the following: Kierra McLean testified that she was Mr. Johnson's fiancee in November of 2002. She stated that Mr. Johnson possessed a chrome handgun a couple of months before November. Defendant also called Antonio Johnson, who testified that he initially did not tell law enforcement officers the truth about the robbery because he was afraid and did not want to be charged. Johnny Townsend testified that he shared a cell block with Mr. Johnson at the Cumberland County Jail. Mr. Townsend stated that Mr. Johnson told him that defendant was not involved in the robbery but that he was going to testify against defendant.
At the close of all evidence, defendant renewed his motion to dismiss all charges, including the kidnapping charge on double jeopardy grounds. The trial court denied the motion to dismiss. The jury convicted defendant of robbery with a dangerous weapon, first degree kidnapping, conspiracy to commit robbery with a dangerous weapon, and assault with a deadly weapon inflicting serious injury. The court arrested judgment on the conviction for assault with a deadly weapon inflicting serious injury. Defendant was sentenced to 93 to 121 months imprisonment for kidnapping; 34 to 50 months for conspiracy; and 82 to 108 months for robbery, to run consecutively with the sentence for the kidnapping conviction. Defendant appeals.
By his first assignment of error, defendant contends the trial court erred in denying his motion to dismiss the kidnapping charge because the State did not prove that the kidnapping was a separate offense from the robbery. Specifically, defendant argues that the restraint of the victim was an inherent part of the robbery and to convict defendant of the independent offense of kidnapping violates his right of protection against double jeopardy. Our Supreme Court has stated that "certain felonies (e.g., forcible rape and armed robbery) cannot be committed without some restraint of the victim." State v. Fulcher, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). As such, the Court construed the word "restrain" in the kidnapping statute, N.C. Gen. Stat. § 14-39, as "a restraint separate and apart from that which is inherent in the commission of the other felony." Id. Similarly, in State v. Irwin, 304 N.C. 93, 282 S.E.2d 439 (1981), the Supreme Court construed the word "removal from one place to another" in N.C. Gen. Stat. § 14-39 as requiring a removal "separate and apart from that which is an inherent, inevitable part of the commission of another felony." Irwin, 304 N.C. at 103, 282 S.E.2d at 446. In Irwin, the defendant and his accomplice forced a store employee at knifepoint to walk from the cash register to the back of the store where the prescription counter and safe were located. The Court noted that the purpose of removing the employee to the area of the safe was so that the defendant could obtain drugs from the safe. Id. The Court explained that this movement did not support a separate kidnapping conviction:
To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy. In an armed robbery, for example, punishment for two offenses would be sanctioned if the victim was forced to walk a short distance towards the cash register or to move away from it to allow defendant access. Under such circumstances the victim is not exposed to greater danger than that inherent in the armed robbery itself, nor is he subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.
Id. (emphasis added).
In determining whether the trial court correctly denied defendant's motion to dismiss, we "must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it." State v. Locklear, 322 N.C. 349, 358, 368 S.E.2d 377, 382 (1988). In the instant case, the State produced evidence that defendant grabbed the victim and dragged her away from the cash register. Defendant and the victim struggled, but then defendant picked her up and carried her off to the last set of clothes racks behind the register and slung her against a pipe. Based on the testimony of the victim and Mr. Johnson, the jury could reasonably infer that after the victim was grabbed and pulled back from the cash register when Mr. Johnson was next to the register and able to draw money from it, the additional act of defendant carrying her away and slinging her against a metal pipe exposed her to "a greater danger than that inherent in the armed robbery itself." See Irwin, 304 N.C. at 103, 282 S.E.2d at 446. In the light most favorable to the State, moving the victim eleven feet away from the register and slinging her against a pipe with sufficient force to knock her unconscious was not an inevitable part of defendant's obtaining access to the cash register. Cf. Irwin, 304 N.C. at 103, 282 S.E.2d at 446 ("To accomplish defendant's objective of obtaining drugs it was necessary that either [the store owner or the employee] go to the back of the store to the prescription counter and open the safe."). The credibility of the victim and Mr. Johnson was an issue for the jury, see State v. Locklear, 322 N.C. at 358, 368 S.E.2d at 383, and any contradiction in the evidence, e.g., whether the victim was thrown in order to complete the robbery, must be resolved by the jury. See State v. Gibson, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995) (discrepancies and contradictions are for the jury to resolve).
In conclusion, then, defendant's act of carrying the victim to the clothes racks and throwing her onto a metal pipe was more than a technical asportation inherent in the commission of the robbery. Thus, there was substantial evidence that defendant restrained and removed the victim beyond the acts necessary to commit the robbery. We affirm the trial court's denial of defendant's motion to dismiss the kidnapping charge.
Next, defendant contends that the trial court erred in declining to order a mistrial as a result of the prosecutor's conduct of hugging one of the State's witnesses, Ms. Swinney, as she left the witness stand. The record reflects that after Ms. Swinney finished testifying and stepped down from the stand, she gave the assistant district attorney a hug. Defendant objected to this conduct and, the following day, made a motion for a mistrial. Defendant argued that this nonverbal expression by the State improperly bolstered the credibility of the witness before the jury. However, the trial court determined that the conduct did not cause substantial and irreparable prejudice to defendant's case and denied the motion. The standard of the granting of a mistrial is set forth in N.C. Gen. Stat. § 15A-1061, which provides in pertinent part as follows:
Upon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.
N. C. Gen. Stat. § 15A-1061 (2005). A decision to grant or deny a motion for a mistrial is within the trial court's sound discretion. See State v. McCarver, 341 N.C. 364, 383, 462 S.E.2d 25, 36 (1995), cert. denied, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). This Court will not reverse the trial court's decision unless it is so clearly erroneous as to constitute a manifest abuse of discretion. Id.
We find particularly helpful to our analysis this Court's discussion of the purpose behind the discretion accorded the trial court in deciding whether to grant a mistrial following a display of emotion in the courtroom:
Not every disruptive event occurring during the course of the trial requires the court automatically to declare a mistrial, and if in the sound discretion of the trial judge it is possible, despite the untoward event, to preserve defendant's basic right to receive a fair trial before an unbiased jury, then the motion for mistrial should be denied. On appeal, the decision of the trial judge in this regard is entitled to the greatest respect. He is present while the events unfold and is in a position to know far better than the printed record can ever reflect just how far the jury may have been influenced by the events occurring during the trial and whether it has been possible to erase the prejudicial effect of some outburst. Therefore, unless his ruling is clearly erroneous so as to amount to a manifest abuse of discretion, it will not be disturbed on appeal.
State v. Sorrells, 33 N.C. App. 374, 376-77, 235 S.E.2d 70, 72 (internal citations and quotations omitted) (quoted in State v. Ward, 338 N.C. 64, 92-93, 449 S.E.2d 709, 724 (1994)), disc. review denied, 293 N.C. 257, 237 S.E.2d 539 (1977).
Here, even assuming that the hug initiated by Ms. Swinney may be characterized as an emotional outburst, defendant has not shown that the exchange between the State and its witness denied him a fair trial. The trial court entered findings on the record following a voir dire held in response to defendant's motion. After reciting the correct statutory standard for declaring a mistrial, the trial court inquired further into the circumstances of the hug. The assistant district attorney stated that the witness had been inconvenienced greatly in traveling to testify in this trial and that his gesture to the witness was no different than a handshake. The trial court then considered the jury's perceptions of the gesture and found that defendant was not substantially prejudiced. As the trial judge was in the best position to assess the prejudicial effect of this conduct by observing the reactions of the jurors, we decline to overrule his decision where it is not so clearly erroneous as to be a manifest abuse of discretion. Accordingly, we affirm the trial court's denial of defendant's motion for a mistrial. Next, defendant assigns error to the trial court's evidentiary ruling excluding the testimony of defendant's witness Brenda Murray. The trial court conducted a voir dire, outside the presence of the jury, to evaluate the proffered testimony of this witness. Ms. Murray testified that on the morning of 8 November 2002 she was walking from her home to the Quick Stop and observed two black males run past her. She stated that, based upon the complexions and hairstyles of the two men she observed, defendant was not one of them. Ms. Murray stated that she was under the influence of alcohol at the time she saw the two males but that it had no effect upon her ability to determine whether either of them was defendant. The witness's testimony on where she first saw the men was inconsistent: at first, she stated she saw them come out the back door of Hamont Cleaners; she later clarified this point and stated that she saw them come from behind the cleaners but not from the cleaners or its back door. When asked what time she saw the two men, the witness responded that it was between 6:30 and 7:00 a.m. and that it was light enough to see at that time. Within its proper discretion, the trial court weighed the probative value of the testimony against its likelihood to confuse the issues or mislead the jury. See N.C. Gen. Stat. § 8C-1, Rule 403 (2005). The trial court concluded, based upon the witness's confusion as to the time frame and the inconsistencies regarding the location of the two males when she observed them, that the probative value of the testimony was substantially outweighed by its likelihood to confuse or mislead the jury. We review the trial court's ruling pursuant to Rule 403 for an abuse of discretion:
Exclusion of evidence on the basis of Rule 403 is within the sound discretion of the trial court, and abuse of that discretion will be found on appeal only if the ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision.
State v. White, 349 N.C. 535, 552, 508 S.E.2d 253, 264 (1998) (internal quotations omitted), cert. denied, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). The trial court did not rule that the proffered testimony was irrelevant and thus inadmissible under Rule 401; rather, the court conducted a balancing test under Rule 403. Defendant nonetheless argues that, because the testimony of Ms. Murray tends to make the fact of defendant's guilt less probable, the court erred in ruling that the testimony was irrelevant. We are not presented with a situation where the trial court ruled as a matter of law that the challenged evidence was irrelevant. Cf. State v. Cotton, 318 N.C. 663, 668, 351 S.E.2d 277, 280 (1987) (when trial court has discretion to rule evidence inadmissible under Rule 403 but instead erroneously rules the evidence is irrelevant under Rule 401 as a matter of law, the prejudiced party is entitled to relief). After carefully considering the inconsistencies between the time of the events Ms. Murray testified to and the time of the robbery, and also the inconsistencies as to the location of the two men when she observed them, the trial court did not abuse its discretion in ruling the evidence inadmissible under Rule 403. We overrule defendant's assignment of error. Finally, defendant challenges the trial court's evidentiary ruling concerning the State's witness Batwa Allen. At a voir dire hearing, the State proffered the testimony of Ms. Allen as evidence of motive under Rule 404(b) of the North Carolina Rules of Evidence to establish that defendant had a need for money. Specifically, the State offered the testimony of Ms. Allen that a few days before the robbery defendant came into the Quick Stop where she was working and asked what she would do if he came in and asked for all her money. Defendant objected, asserting that this statement defendant made several days before the robbery was not relevant and that the probative value was substantially outweighed by the prejudicial value of the testimony. The trial court, in overruling defendant's objection to the admission of the Allen testimony, noted that it would instruct the jurors that they may consider the evidence only for the purpose of defendant's motive to commit the robbery. Ms. Allen testified before the jury as follows:
. . . [Defendant] came in and any other time when he came in, you know, we, you know pass words as a playing thing. And he came in and it was him and somebody else and he was like, What would you do if I robbed you? I said, I wouldn't do nothing but just send the police across the street where you live at. You know what I'm saying? He said, I thought we was cool. I said, if we was cool, you would have never said that, you know, in a joking manner but it wasn't nothing I took serious.
The trial court gave a limiting instruction immediately following Ms. Allen's testimony.
Defendant contends that the statements to Ms. Allen are not indicative of motive. However, Rule 404(b) is a "general rule ofinclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). Defendant's reference to obtaining money, either lawfully of unlawfully, is indicative of a motive to commit robbery. Defendant argues in the alternative that the testimony regarding defendant's statements to Ms. Allen was unfairly prejudicial and should have been excluded under Rule 403. However, the trial court gave a proper limiting instruction and admonished the jury not to consider the testimony as evidence that defendant is of bad character and therefore more likely to have committed the offenses charged. See State v. Hyatt, 355 N.C. 642, 662, 566 S.E.2d 61, 74-75 (2002) (trial court guarded against prejudice by giving a limiting instruction to the jury that Rule 404(b) evidence may not be considered as character evidence), cert. denied, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003). We find no abuse of the trial court's discretion in admitting the testimony of Ms. Allen.
No error.
Judges McCULLOUGH and LEVINSON concur.
Report Per Rule 30(e).