STATE OF NORTH CAROLINA v. CORNELIUS DION ROSS

No. COA98-467

(Filed 18 May 1999)

**Kidnapping— second-degree—removal in connection with another felony**

The trial court erred by denying defendant's motion to dismiss a charge of second-degree kidnapping in a prosecution for armed robbery, conspiracy, and second-degree kidnapping. The evidence falls short of showing that the victim's movement was a removal separate and apart from the armed robbery and defendant was not exposed to greater danger than that inherent in the armed robbery.

Appeal by defendant from judgments entered 31 October 1997 by Judge Coy E. Brewer, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 11 January 1999.

*Attorney General Michael F. Easley, by Associate Attorney General Buren R. Shields, III, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

**STATE v. ROSS**

[133 N.C. App. 310 (1999)]

McGEE, Judge.

The record in this case tends to show that on 25 December 1995 three men identified as Jackson, Wilkins and Bryant decided to rob George "Frank" Clark, Wilkins' acquaintance. They went to Wilkins' house in a car driven by Bryant to pick up a shotgun to use in the robbery. After they picked up the shotgun they stopped at a gas station, where Jackson telephoned defendant, Cornelius Dion Ross. Jackson, Wilkins and Bryant drove to defendant's house and picked him up. All four discussed plans for the proposed robbery. When they arrived at Clark's apartment, Jackson, Wilkins and defendant got out of the car, and Bryant remained in the car.

Clark was in his apartment with one of his co-workers, Mario Price. At approximately 8:00 p.m., Wilkins knocked on the door of Clark's apartment, determined that Clark was home, and asked to use the bathroom. Shortly thereafter, defendant and Jackson knocked on the door. Clark and Price went toward the door and one of them opened it. Defendant, standing in front of Jackson, asked if Wilkins had come in, and then asked, "Who is Frank?" to determine which occupant of the apartment was Clark. When Clark identified himself, defendant stepped aside, revealing Jackson, who was holding the shotgun. Jackson pointed the shotgun at Clark and Price and ordered them to step back and get down on the floor. Price backed up two or three steps and dropped to the floor in the apartment living room. Clark backed into the apartment kitchen, where he dropped to the floor. Defendant, meanwhile, closed the apartment door part way and apparently stood watch.

Jackson went into the kitchen where Clark was down on the floor and ordered Clark to take off his two rings and hand them over. Jackson then told Clark to take him to Clark's bedroom. In the bedroom, Jackson ordered Clark to get on the floor. Jackson then took money from a pair of Clark's trousers and also took a camcorder, a pager and a leather coat. Jackson called defendant to come into the bedroom. When defendant went to the bedroom door, Jackson tossed Clark's leather coat to defendant. Then Jackson, Wilkins and defendant fled the apartment.

Defendant was convicted of robbery with a dangerous weapon, conspiracy to commit robbery with a dangerous weapon and second-degree kidnapping. He was sentenced to seventy-five to ninety-nine months on the armed robbery conviction, twenty-five to thirty-nine months on the conspiracy conviction and 25 to 39 months on the

second-degree kidnapping conviction, with the sentences to be served consecutively. Defendant appeals.

During trial, defendant moved at the close of the State's evidence and at the close of all the evidence for dismissal of the second-degree kidnapping charge against him. Defendant assigns error to the trial court's denial of his motion to dismiss.

N.C. Gen. Stat. §§ 14-39(a)(2) and 14-39(b) (1998 Cum. Supp.) define second-degree kidnapping:

> (a) Any person who shall unlawfully confine, restrain, or remove [another person] from one place to another . . . without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . .
>
> (2) Facilitating the commission of any felony[.]
>
> . . .
>
> (b) . . . If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree[.]

Our appellate courts have applied the statute in a number of cases in which second-degree kidnapping has been charged in connection with the commission of another felony.

In *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981), our Supreme Court stated:

> [W]e construe the phrase "removal from one place to another" to require a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony. To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy. In an armed robbery, for example, punishment for two offenses would be sanctioned if the victim was forced to walk a short distance towards the cash register or to move away from it to allow defendant access. Under such circumstances the victim is not exposed to greater danger than that

inherent in the armed robbery itself, nor is he subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.

*Id.* at 103, 282 S.E.2d at 446 (citation omitted).

In *State v. Beatty*, 347 N.C. 555, 495 S.E.2d 367 (1998), our Supreme Court said, " 'The key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping "exposed [the victim] to greater danger than that inherent in the armed robbery itself." ' " *Id.* at 559, 495 S.E.2d at 369-70 (citations omitted).

In considering a motion to dismiss, "[t]he evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence." *State v. Roseborough*, 344 N.C. 121, 126, 472 S.E.2d 763, 766 (1996) (citation omitted).

In the case before us, the defendant argues his actions in concert with Jackson did not amount to "a removal separate and apart" from the commission of the armed robbery. *Irwin* at 103, 282 S.E.2d at 446. The State argues that Jackson removed Clark from the apartment living room to the kitchen. However, the record does not support that assertion. The record indicates that, upon entering the apartment, Jackson pointed the shotgun at Clark and Price and ordered them to step away from the apartment door and get on the floor. Price backed up a few steps and dropped to the floor in the living room, while Clark backed into the apartment kitchen and dropped to the floor. The record contains no evidence that Jackson ordered Clark from the living room into the kitchen. Clark's testimony was that he backed all the way into the kitchen when Jackson entered the apartment and ordered him and Price to back up and get on the floor. "[T]hat's as far as I could back up," Clark testified. The State's evidence, taken in its strongest light, falls short of showing that Clark's movement into the kitchen was a removal that was "separate and apart" from the armed robbery. *Irwin* at 103, 282 S.E.2d at 446.

Jackson followed Clark into the kitchen and ordered Clark to take him to Clark's bedroom. In the bedroom, Jackson ordered Clark to the floor and then took money and other items from the bedroom. Defendant argues that Jackson's action ordering Clark into the bedroom was an "inherent" part of the armed robbery. *Irwin* at 103, 282 S.E.2d at 446.

Clark was the particular target of the robbery, and he was ordered into his bedroom as part of the robbery. Clark testified that while the two men were in the bedroom, Jackson asked Clark where he had his money. Clark responded that some money was in the pocket of trousers lying on the bedroom floor, and Jackson took the money from the trousers. While the two men were in the bedroom, Jackson also took the other items noted above. Further, the record contains no evidence suggesting that the removal of Clark to his bedroom as part of the robbery "exposed [him] to greater danger than that inherent in the armed robbery itself." *Beatty* at 559, 495 S.E.2d at 369 (citations omitted).

The State argues that the facts before us are similar to those in *State v. Joyce*, 104 N.C. App. 558, 410 S.E.2d 516 (1991), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992), an armed robbery case in which our Court upheld the trial court's refusal to dismiss second-degree kidnapping charges. We disagree. In *Joyce*, the victims of the robbery "were moved from one room to another room where they were confined." *Id.* at 567, 410 S.E.2d at 521. This Court noted that "[t]he removals were not an integral part of the crime nor necessary to facilitate the robberies, *since the rooms where the victims were ordered to go did not contain safes, cash registers or lock boxes which held property to be taken.*" *Id.* (emphasis added). The facts in the case before us are not comparable to those in *Joyce*. Clark was ordered to go to his bedroom, where Jackson questioned him about the location of his money and where Jackson took money and a number of items. Unlike in *Joyce*, the room where Jackson ordered his victim to go contained property that Jackson stole.

The State also directs our attention to *State v. Brice*, 126 N.C. App. 788, 486 S.E.2d 719 (1997), another armed robbery case in which our Court upheld the trial court's refusal to dismiss second-degree kidnapping charges, but awarded defendants a new trial on other grounds. But *Brice*, too, is distinguishable from the case before us. In *Brice*, while one defendant, Good, was in a bedroom robbing two male victims of valuables, an accomplice, Tate, was in the living room with a female victim. Defendant Tate threatened the woman with a gun and forced her to lie face down on the living room floor *but took nothing from her. Brice* at 791, 486 S.E.2d at 720 (emphasis added). In *Brice*, our Court held that terrorizing the woman in the living room was not an inherent part of the robbery taking place in the bedroom. *Id.* Moreover, while the *Brice* court did not address this point, we observe that in *Brice*, Tate's action threatening the woman with a gun

in the living room "exposed [her] to greater danger than that inherent in the armed robbery" that was taking place in the bedroom. *See Beatty* at 559, 495 S.E.2d at 369-70 (citations omitted).

*State v. Davidson*, 77 N.C. App. 540, 335 S.E.2d 518 (1985), *disc. review denied*, 315 N.C. 393, 338 S.E.2d 882 (1986), is another armed robbery case in which our Court denied a motion to dismiss a second-degree kidnapping charge. In *Davidson*, the robbers forced the victims to go thirty to thirty-five feet from the front of a store to a dressing room in the rear and bound the victims with tape. *Davidson* at 543, 335 S.E.2d at 520. The *Davidson* court reasoned that none of the store's property was kept in the dressing room and that moving the victims there was not an "inherent" part of the robbery. *Id.* Noting the distinction between actions that are "inherent" in an armed robbery and those that are not, the *Davidson* court, citing *Irwin* at 102-03, 282 S.E.2d at 446, said, "A restraint which is an inherent, inevitable element of a felony such as armed robbery will not sustain a separate conviction for kidnapping under N.C. Gen. Stat. 14-39(a)." *Id.* at 542, 335 S.E.2d at 519-20.

In the case before us, the victim Clark was ordered at gunpoint to go to his bedroom, where items were taken from him. Jackson's actions, while reprehensible, were an "inherent" part of the armed robbery. *Irwin* at 103, 282 S.E.2d at 446. Clark was not "exposed . . . to greater danger than that inherent in the armed robbery[.]" *See Beatty* at 559, 495 S.E.2d at 369-70 (citations omitted).

It was error for the trial court to deny defendant's motion to dismiss the charge of second-degree kidnapping, and the conviction for second-degree kidnapping is vacated.

Our decision vacating the second-degree kidnapping charge makes it unnecessary for us to address defendant's other assignment of error related to that charge.

We have reviewed defendant's remaining assignment of error as to the trial of his case and find it to be without merit.

Vacated in part, no error in part.

Chief Judge EAGLES and Judge MARTIN concur.