STATE OF NORTH CAROLINA v. JAMES ADAM ROBERTSON, Defendant

No. COA1-111

(Filed 2 April 2002)

**1. Kidnapping— confinement—exceeding that required for attempted rape**

The trial court did not err by denying defendant's motion to dismiss a kidnapping charge where the evidence supports an inference that defendant fraudulently induced the victim to return to his apartment, fraudulently induced her to enter his bedroom, restrained her, brandished a knife, and threatened either to have sex with her or to kill her. Although defendant contended that the only restraint was an inherent and inevitable part of an attempted rape, the evidence of restraint or confinement exceeded that needed to establish attempted rape.

**2. Evidence— unrelated drug activity—contextual**

The trial court did not err by allowing evidence of defendant's illegal drug activity in a kidnapping and attempted rape prosecution where defendant told the victim that he was the main Ecstasy dealer in the apartment complex and that he could help the victim find the person she was searching for. The court admitted the testimony to establish context, which incidentally involved illegal drugs.

**3. Sentencing— kidnapping and attempted rape—aggravating factor—masturbation**

The trial court erred when sentencing defendant for kidnapping and attempted rape by aggravating the sentence for "performing the loathsome act of masturbation." Observing this act may have been unpleasant for the victim, but there was no showing that it increased her risk of harm.

Appeal by defendant from judgment entered 3 October 2000 by Judge W. Douglas Albright in Forsyth County Superior Court. Heard in the Court of Appeals 28 November 2001.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert O. Crawford, III, for the State.*

*J. Clark Fischer, for the defendant-appellant.*

HUDSON, Judge.

Defendant was indicted 17 July 2000 for first degree kidnapping and attempted first degree rape. On 3 October 2000, a jury convicted defendant of attempted first degree rape and second degree kidnapping. The trial judge sentenced him in the aggravated range to consecutive sentences of 276 to 341 months for the attempted first degree rape and 36 to 53 months for the second degree kidnapping. Defendant appeals his convictions and his sentences. We find no error in the convictions, but remand for re-sentencing.

We begin with a brief review of the evidence presented at trial. The victim, Margaret M. ("Margaret"), met Nicole M. D. ("Nicole") at a party on 26 February 2000. Margaret told Nicole that she was interested in buying five hundred dollars worth of the drug Ecstasy, and Nicole offered to help her make the purchase. The two women drove Margaret's car, first to retrieve money from Margaret's boyfriend, and then to an apartment complex to buy the drugs. When they arrived at the complex, Nicole got out of the car alone with Margaret's money, returned briefly, and then disappeared. Margaret waited fifteen minutes before realizing that Nicole had stolen her money.

Margaret got out of her car to look for Nicole when a man named Adam Broom approached her. Although Margaret did not know Broom, she told him what had happened and he agreed to take her to someone who could help her find Nicole. Broom introduced Margaret to defendant, who described himself as the "main Ex dealer in this complex," and told her he could help. After an unsuccessful search of the neighborhood, Broom, Margaret, and defendant returned to defendant's apartment, where Broom lit a "blunt" (a cigar rolled with marijuana). He offered some to Margaret; she declined, saying that she did not "have time to get high," but needed to go and find Nicole.

Defendant then asked Margaret to come into his bedroom so he could "show [her] something." When she entered the room,

defendant closed the door and pulled out a "steak knife." Defendant instructed Margaret to "[s]it on the bed and take your shirt off or clothes off." When Margaret refused, defendant took his shirt off and attempted to get on top of Margaret. Margaret repeatedly pushed him away, calling out "no," "stop," and "help," to no avail. Defendant began to masturbate and threatened to kill Margaret if he could not have sex with her. She continued to push him off of her, "probably a dozen times."

Eventually, defendant assured Margaret that if she would let him see her naked, he would let her go. But when Margaret pulled down her jeans and opened her shirt, defendant came at her and "grabbed her panties and . . . tried to rip them off." Then he pushed her against the wall, with his hand around her neck and the steak knife "at [her] stomach and throat." At that point, defendant heard noise in the apartment and ordered Margaret into the closet. She refused and watched from the cracked-open door when he left the bedroom. When she saw other men speaking with defendant in the apartment, Margaret left the bedroom. Defendant saw her and called to her, but Margaret kept going. She unbolted the door, ran out of the apartment, down the stairs and out of the building. Defendant, still in his boxer shorts, began to chase her, but his friends restrained him. Margaret banged on apartment doors until someone let her in and called the police for her. The police arrived and arrested defendant.

**[1]** In his first argument, defendant contends that the trial court erred by denying defendant's motion to dismiss the kidnapping charge, saying the State did not present sufficient evidence of all elements of the offense. Kidnapping is defined as:

[a]ny person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C. Gen. Stat. § 14-39(a)(2) (1999). Pursuant to the same statute, kidnapping is a second degree offense "[i]f the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted." N.C.G.S. § 14-39(b).

Defendant argues that the second degree kidnapping charge should have been dismissed because the evidence of kidnapping was not separate and distinct from that necessary to prove attempted rape. Defendant argues that "the evidence of second degree kidnapping merged into the offense of attempted first degree rape, thus raising an issue of double jeopardy." We disagree.

To sustain a conviction of kidnapping, the state must prove the unlawful confinement or restraint of a person for the purpose of committing the felony alleged in the indictment. *See* N.C.G.S. 14-39(a); *State v. Morris*, 147 N.C. App. 247, 555 S.E.2d 353 (2001) (reversing a conviction for kidnapping where the evidence did not support what was alleged in the indictment). "[T]he requisite restraint need not be accomplished solely by physical force. It may also be accomplished by trickery or by 'fraudulent representations amounting substantially to a coercion of the will' of the victim." *State v. Harris*, 140 N.C. App. 208, 213, 535 S.E.2d 614, 618 (quoting *State v. Murphy*, 280 N.C. 1, 6, 184 S.E.2d 845, 848 (1971)), *disc. rev. denied*, 353 N.C. 271, 546 S.E.2d 121 (2000). Here, the trial court instructed the jury that "the State must prove that the person did not consent to this confinement or restraint. I further instruct you that consent obtained or induced by fraud or fear is not consent." The evidence supports an inference that defendant fraudulently induced Margaret to return to his apartment by assuring her that he would help her, and then fraudulently induced her to enter his bedroom. Once there, he restrained her, brandished a knife, and threatened either to have sex with her or to kill her.

Here, the indictment alleged that defendant confined or restrained the victim for the purpose of "facilitating the commission of a felony, Attempted First Degree Rape." Attempted first degree rape is a Class B1 felony. *See* N.C. Gen. Stat § 14-27.2(b) (1999). Pursuant to the statutory requirements for kidnapping, "[t]he unlawful restraint must be an act independent of the intended felony." *Harris*, 140 N.C. App. at 213, 535 S.E.2d at 617. However, the "[r]estraint does not have to last for an appreciable period of time." *State v. Brayboy*, 105 N.C. App. 370, 375, 413 S.E.2d 590, 593, *disc. rev. denied*, 332 N.C. 149, 419 S.E.2d 578 (1992). The trial court properly instructed the jury that:

> the State must prove that the defendant confined or restrained the person for the purpose of facilitating his commission of the felony of attempted first degree rape.

And, fourthly, the State must prove that this confinement or restraint was a separate and complete act independent of and apart from the attempted first degree rape.

Defendant contends that the only restraint involved here was an "inherent and inevitable part" of the commission of the attempted rape. He relies on several cases, which he contends illustrate this point, including *State v. Ross*, 133 N.C. App. 310, 515 S.E.2d 252 (1999), *State v. Allred*, 131 N.C. App. 11, 505 S.E.2d 153 (1998), and *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981), among others. We disagree and find that the cases concerning *attempted rape* are also instructive on this matter.

> [T]o convict a defendant of attempted rape, the State must prove, beyond a reasonable doubt, two essential elements: (i) that defendant had the specific intent to rape the victim and (ii) that defendant committed an act that goes beyond mere preparation, but falls short of the actual commission of the rape. . . . The element of intent as to the offense of attempted rape is established if the evidence shows that defendant, at any time during the incident, had an intent to gratify his passion upon the victim, notwithstanding any resistance on her part.

*State v. Schultz*, 88 N.C. App. 197, 200, 362 S.E.2d 853, 855 (1987) (citations omitted), *aff'd per curiam*, 322 N.C. 467, 368 S.E.2d 386 (1988); *see also Brayboy*, 105 N.C. App. at 374, 413 S.E.2d at 593 (defining *attempt* in the context of an attempted rape). Here, defendant plainly stated his specific intent. The evidence indicating that defendant threatened Margaret with a knife and began to disrobe is sufficient to raise inferences of overt acts which are "beyond mere preparation," but which fall short of completing the rape. *Schultz*, 88 N.C. App. at 200, 362 S.E.2d at 855. Thus, the evidence established both elements of attempted rape.

The defendant, however, argues that any evidence of restraint to support the kidnapping was inherent in the attempted rape, so that the kidnapping conviction cannot stand. He refers to *Ross*, 133 N.C. App. 310, 515 S.E.2d 252, in which we reversed defendant's convictions for kidnapping in connection with an armed robbery. The defendant and others ordered the victims to first lie on the floor in their apartment and then to take the defendants into their bedrooms for their personal belongings. *See id.* We held that "[defendant] Jackson's actions, while reprehensible, were an inherent part of the armed robbery." *Id.* at 315, 515 S.E.2d at 255 (citations and quotations

omitted). Similarly, defendant cites *Irwin*, 304 N.C. 93, 282 S.E.2d 439, in which the Court reversed a kidnapping conviction. There, defendant was charged with kidnapping in the commission of an attempted armed robbery of a drug store. *See id.* The State alleged that defendant kidnapped the victim when, during the attempted robbery, his accomplice "forced Ms. Sasser at knifepoint to walk from her position near the fountain cash register to the back of the store in the general area of the prescription counter and safe." *Id.* at 103, 282 S.E.2d at 446. In reversing the conviction for the kidnapping of Ms. Sasser, the Supreme Court held that,

> [her] removal to the back of the store was an inherent and integral part of the attempted armed robbery. To accomplish defendant's objective of obtaining drugs it was necessary that either Mr. Stewart [the store owner] or Ms. Sasser go to the back of the store to the prescription counter and open the safe. . . . Ms. Sasser's removal was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense.

*Id.* at 103, 282 S.E.2d at 446; *see also Allred*, 131 N.C. App. 11, 21, 505 S.E.2d 153, 159 (reversing three of defendant's convictions for kidnapping and affirming the fourth conviction, where, as to one victim "removal was not an integral part of any robbery committed against him, but a separate course of conduct designed to prevent him from hindering defendant and his accomplice from perpetrating the robberies against the other occupants.").

More recently, in *State v. Muhammad*, 146 N.C. App. 292, 552 S.E.2d 236 (2001), we found no error in defendant's conviction for common law robbery and second degree kidnapping. There, defendant approached the victim from behind, put an arm around his throat, and hit the victim in the side. *See id.* at 293, 552 S.E.2d at 236. Defendant then walked the victim to the front of the restaurant where the restaurant manager gave defendant cash from the safe and register, and then defendant fled. *See id.* at 293, 552 S.E.2d at 237. There, we held that defendant's "actions constituted restraint beyond what was necessary for the commission of common law robbery." *Id.* at 296, 552 S.E.2d at 238. Further, the Court noted that "defendant did substantially more than just force [the victim] to walk from one part of the restaurant to another," and affirmed defendant's conviction for both common law robbery and second degree kidnapping. *Id.; see also State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978)

(noting that like armed robbery, forcible rape is a felony that "cannot be committed without some restraint of the victim.").

Here, however, defendant pulled a knife, stated his intent, threatened to rape Margaret, and began to undress. Evidence of these actions supports the defendant's conviction of attempted rape, as defined in *Schultz. See Schultz*, 88 N.C. App. at 202, 362 S.E.2d at 856. In addition, however, defendant induced Margaret into the bedroom, kept her from leaving, and physically restrained her when he repeatedly climbed on her. He confined her again when he left the bedroom. Accordingly, the evidence of confinement or restraint was separate and distinct from that necessary to prove the attempted rape. Based on our analysis of these cases and others, we conclude that the evidence of restraint or confinement exceeded that needed to establish attempted rape, and that the evidence in this case supports defendant's conviction for kidnapping as well. This assignment of error is overruled.

[2] In his second assignment of error, defendant contends that the trial court erred in allowing evidence of defendant's illegal drug activity, because it was "irrelevant to any issue before the jury and any possible relevance was vastly outweighed by its prejudicial impact." Pursuant to Rule 401 of the North Carolina Rules of Evidence, relevant evidence is defined as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Such evidence is generally admissible, unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." N.C. R. Evid. 402 & 403 (1999). Here, evidence was admitted concerning defendant's statements of illegal drug activity. Margaret testified that she was looking for Nicole, who had disappeared with her money, when she was introduced to defendant. Defendant told her that he was the main Ecstasy dealer in the apartment complex and that he knew all of the places that Nicole could be found.

We note that defendant did not properly preserve this issue for appeal, because he did not object to the testimony on this basis when it was presented at trial. *See* N.C. R. App. Proc. 10(b)(1) (1999). He objected only to Margaret's failure to specify which person made the statements. Even though not properly preserved for appeal, however, in our discretion, we address the admission of this testimony, pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure (1999).

In *State v. Agee*, 326 N.C. 542, 546-48, 391 S.E.2d 171, 173-76 (1990), the trial court properly admitted evidence of defendant's possession of marijuana which led to his arrest for possession of LSD. The charges against defendant for possessing marijuana were dropped, but the evidence concerning the marijuana was still admissible because it gave rise to a chain of events or circumstances resulting in defendant's conviction for possession of LSD. *See id.* The Court in *Agee* held that this evidence was admissible and described it as "[e]vidence tending to establish the context or chain of circumstances of a crime, which incidentally establishes the commission of a prior bad act." *Id.* at 547, 391 S.E.2d at 174. In *Agee*, the Court also held that the admission of this evidence did not violate Rules 401, 403, or 404(b) of the North Carolina Rules of Evidence. *See id.* at 550, 391 S.E.2d at 176.

Here, Margaret's testimony concerning how she met defendant and came to believe that he could help her does tend to indicate that he was involved with illegal drug activity. We do not believe that the court admitted the testimony to show defendant's propensity to commit a crime or his character, but as in *Agee*, to establish the context which incidentally involved illegal drugs. *See State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (noting that "evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused"). Here, the trial court did not err in admitting this evidence, and defendant's second assignment of error is overruled.

**[3]** In his third assignment of error, defendant contends that the "trial court committed reversible error by aggravating defendant's sentence for conduct which was necessarily part of the sex offense of which defendant was convicted, and which did not increase defendant's criminal culpability." N.C. Gen. Stat. § 15A-1340.16(d) (1999) requires that "[e]vidence necessary to prove an element of the offence . . . not be used to prove any factor in aggravation." During sentencing, the trial court did not find any of the specific statutory grounds enumerated in N.C.G.S. § 15A-1340.16(d) that would allow defendant to be sentenced in the aggravated range. However, the trial court did find a non-statutory factor in aggravation, described as,

> evidence that the defendant unnecessarily and maliciously subjected the victim to degradation and undue humiliation by shamefully performing a loathesome act of masturbation in her

presence and by compelling the victim to disrobe and reveal her naked body after leading her to believe she would be released unharmed if she did so.

We agree with defendant that this nonstatutory factor does not increase defendant's culpability.

Any non-statutory factor used to increase a defendant's sentence to the aggravated range must comply with the requirements of N.C.G.S. § 15A-1340.16(d)(20), that "[a]ny other aggravating factor [be] reasonably related to the purposes of sentencing." *See State v. Manning*, 327 N.C. 608, 613-14, 398 S.E.2d 319, 322 (1990) (holding that it was appropriate to use the non-statutory aggravating factor of the crimes at issue being committed for pecuniary gain, because the factor was reasonably related to the purposes of sentencing). The purposes of sentencing are to:

> impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

N.C. Gen. Stat. § 15A-1340.12 ("Purposes of sentencing."). Here defendant's behavior did not fit into any of the nineteen statutorily specified aggravating factors, nor did his behavior qualify as "reasonably related to the purposes of sentencing." The trial court found that "performing the loathesome [sic] act of masturbation" subjected the victim to "degradation and undue humiliation." While observing this act may have been unpleasant for Margaret, there was no showing that it increased any risk of harm to her. Certainly she was more threatened by defendant's jumping on top of her and grabbing her by the throat while threatening her with a knife. Therefore, we do not believe that this factor was properly used to require that he be sentenced above the presumptive range, and a new sentencing hearing is necessary. *See* N.C.G.S. § 15A-1340.12.

No error; remanded for new sentencing hearing.

Judges TIMMONS-GOODSON and TYSON concur.