**STATE v. TAYLOR**

[191 N.C. App. 561 (2008)]

STATE OF NORTH CAROLINA v. MARIO DEANDRE TAYLOR, DEFENDANT

No. COA07-391

(Filed 5 August 2008)

**Kidnapping— during robbery—insufficient evidence of separate offense**

The evidence was not sufficient to support convictions for second-degree kidnapping where defendant and others entered a McDonald's, made the patrons and workers lie down, and took the manager to the back to open the safe. The evidence establishes only the elements of robbery with the one added component of the victims being required to lie down, which was a mere technical asportation.

Appeal by defendant from judgments entered 14 July 1999 by Judge Donald Jacobs in Durham County Superior Court. Heard in the Court of Appeals 30 October 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Charlie E. Reece, for the State.*

*Jarvis John Edgerton, IV for defendant-appellant.*

GEER, Judge.

Defendant Mario Deandre Taylor appeals from his convictions of one count of robbery with a dangerous weapon and 10 counts of second degree kidnapping. Defendant primarily challenges the trial court's denial of his motion to dismiss his second degree kidnapping charges, arguing that the State failed to produce sufficient evidence of confinement, restraint, or removal beyond that which was inherent in the robbery with a dangerous weapon. Because we agree with defendant that the State failed to meet its burden, as required by *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978), and its progeny, of establishing an act of confinement, restraint, or removal separate and apart from the robbery, we vacate defendant's second degree kidnapping convictions.

Facts

The State's evidence tended to establish the following facts. On the evening of 14 February 1998, defendant and another man entered a McDonald's restaurant wearing masks. Defendant, who

held a 9mm pistol, ordered everyone to lie face down on the floor. When a cashier remained standing, defendant pointed his gun at her and again ordered her to lay down on the floor. Defendant and the other man took the restaurant manager to the back of the restaurant where the safe was located and ordered her to open it. A third man, who had subsequently entered the restaurant, remained in the lobby watching the customers and employees. The cashier, however, ran out of the restaurant.

After defendant and the second man finished collecting the cash from the safe, the three men ran out of the restaurant through a side door. The cashier saw the men leave the restaurant and identified defendant at trial as one of the perpetrators because he had been wearing the same clothes a few days earlier when he came into the restaurant to fill out an application.

Defendant was charged with one count of robbery with a dangerous weapon and 13 counts of second degree kidnapping. During the trial, the court dismissed two of the second degree kidnapping charges. The court dismissed the count relating to the manager because her asportation to the back of the restaurant to open the safe was "part and parcel" of the robbery. With respect to the second count, the court found that no evidence had been presented at all as to that alleged victim.

The jury convicted defendant of robbery with a dangerous weapon and 10 counts of second degree kidnapping; it acquitted him of one count of second degree kidnapping. At sentencing, the trial court made findings regarding aggravating and mitigating factors. As an aggravating factor, the court found that defendant had joined with more than one other person in committing the robbery with a dangerous weapon and the kidnapping, but had not been indicted for conspiracy. In mitigation, the court found that defendant had a support system in the community and that he had voluntarily cooperated with the police. The court concluded that the aggravating factors outweighed the mitigating factors and, therefore, imposed aggravated sentences of (1) 120 to 153 months imprisonment for the robbery with a dangerous weapon conviction, (2) 92 to 110 months for one of his kidnapping convictions (running consecutively), (3) 92 to 110 months for a second kidnapping conviction (running consecutively), and (4) 92 to 110 months for the remaining eight kidnapping convictions (running concurrently with the second kidnapping sentence). Each of defendant's kidnapping sentences included a 60-month firearm enhancement pursuant to N.C. Gen. Stat. § 15A-1340.16(A) (2007).

Defendant appealed in open court on 14 July 1999. While defendant was granted appellate counsel, his appeal did not progress for six years. We granted his petition for writ of certiorari on 21 February 2006.

### Discussion

Defendant's primary argument on appeal is that the trial court erred in denying his motion to dismiss the second degree kidnapping charges. Defendant maintains that the State presented insufficient evidence of confinement, restraint, or removal separate from that which was inherent in the robbery with a dangerous weapon and, therefore, he cannot be convicted of both offenses under *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978).

In *Fulcher*, our Supreme Court stated:

> It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

*Id.*

The Supreme Court further clarified the "separate act" requirement in *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981), holding that removal of an employee at knifepoint from the front to the rear of a pharmacy to open the safe and obtain drugs was "an inherent and integral part of the attempted armed robbery," and, therefore, the removal was legally insufficient to convict the defendant of a separate charge of kidnapping. The Court also noted that the defendant did not expose the victim "to greater danger than that inherent in the armed robbery itself, nor [was the victim] subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *Id.* As a result, the Court concluded that the defendant's removal of the victim was "a mere technical asportation" requiring dismissal of the kidnapping charge. *Id.*

The Court more recently addressed this issue in *State v. Ripley*, 360 N.C. 333, 626 S.E.2d 289 (2006). In *Ripley*, the Court held:

[A] trial court, in determining whether a defendant's asportation of a victim during the commission of a separate felony offense constitutes kidnapping, must consider whether the asportation was an inherent part of the separate felony offense, that is, whether the movement was "a mere technical asportation." If the asportation is a separate act independent of the originally committed criminal act, a trial court must consider additional factors such as whether the asportation facilitated the defendant's ability to commit a felony offense, or whether the asportation exposed the victim to a greater degree of danger than that which is inherent in the concurrently committed felony offense.

*Id.* at 340, 626 S.E.2d at 293-94.

Viewed in the light most favorable to the State, the evidence in this case indicates that defendant entered the McDonald's carrying a handgun, which he pointed at the customers and employees as he ordered them to lie face down on the floor. Defendant and another man found the manager and took her to the back of the restaurant to open the safe while a third man stood guard over the people on the floor.

The State contends that the robbery of the McDonald's occurred at the safe located in the back office of the restaurant, and, therefore, the restraint of the customers and employees in the lobby was unnecessary to the commission of the robbery. We, however, consider the present case to be controlled by *State v. Beatty*, 347 N.C. 555, 495 S.E.2d 367 (1998), in which the Supreme Court held that kidnapping charges, based on similar circumstances, should have been dismissed.

In *Beatty*, a group of men approached the owner of a restaurant outside an open door to the restaurant, put a gun to his head, and told him to go inside and open the safe. *Id.* at 557, 495 S.E.2d at 368. Once inside, the robbers saw two restaurant employees. One employee, Poulos, "was on his knees washing the floor at the front," while the second, Koufaloitis, "stood three to four feet from the safe cleaning the floor in the back." *Id.*, 495 S.E.2d at 368-69. At that point, "[o]ne robber put a gun to Poulos' head and stood beside him during the robbery. An unarmed robber put duct tape around Koufaloitis' wrists and told him to lie on the floor." *Id.*, 495 S.E.2d at 369.

The Supreme Court upheld the kidnapping conviction with respect to Koufaloitis, but not as to Poulos. *Id.* at 560, 495 S.E.2d at 370. The Court explained that "[w]hen defendant bound [Koufaloitis'] wrists and kicked him in the back, he increased the victim's helplessness and vulnerability beyond what was necessary to enable him and his comrades to rob the restaurant." *Id.* at 559, 495 S.E.2d at 370. On the other hand, "[w]ith regard to victim Poulos, the evidence shows only that one of the robbers approached the victim, pointed a gun at him, and stood guarding him during the robbery. The victim did not move during the robbery, and the robbers did not injure him in any way." *Id.* at 560, 495 S.E.2d at 370. The Court explained further: "The only evidence of restraint of this victim was the threatened use of a firearm. This restraint is an essential element of robbery with a dangerous weapon under N.C.G.S. § 14-87, and defendant's use of this restraint exposed the victim to no greater danger than that required to complete the robbery with a dangerous weapon." *Id.*

In this case, as in *Beatty*, the robbery took place at a safe in the back of a restaurant, while the victims were restrained in the front by another robber guarding them with a gun, without any of the victims being bound or injured in any way. Because the restaurant's occupants were not bound, once the robbery was complete and the perpetrators had run out of the restaurant, the occupants were not further restrained. *Compare State v. Morgan*, 183 N.C. App. 160, 167, 645 S.E.2d 93, 99 (2007) (upholding kidnapping conviction when "[t]he evidence shows that the three robbers bound the victims with duct tape, took money and cellular telephones, and left the victims bound when they left the hotel room"), *appeal dismissed and disc. review denied*, 362 N.C. 241, 660 S.E.2d 536 (2008).

The sole distinction between this case and *Beatty* is that the victims were required to lie down on the floor. In *Ripley*, 360 N.C. at 340, 626 S.E.2d at 294 (quoting *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446), however, our Supreme Court concluded:

> [T]he asportation of the [victims] from one side of the motel lobby door to the other was not legally sufficient to justify defendant's convictions of second-degree kidnapping. The moment defendant's accomplice drew his firearm, the robbery with a dangerous weapon had begun. The subsequent asportation of the victims was "a mere technical asportation" that was an inherent part of the robbery defendant and his accomplices were engaged in.

We do not believe that defendant's order, at gunpoint, that the victims lie down on the floor is materially different than the *Ripley* robbers' order, also at gunpoint, that the victims move from outside the door to the lobby to inside the door. Accordingly, under *Ripley*, we hold that the act of requiring the victims to lie down is a mere technical asportation insufficient to sustain a charge of kidnapping separate from the robbery.

This conclusion is supported by this Court's decision in *State v. Ross*, 133 N.C. App. 310, 515 S.E.2d 252 (1999). In *Ross*, the record indicated "that, upon entering the apartment, [a robber] pointed the shotgun at [the two victims] and ordered them to step away from the apartment door and get on the floor." *Id.* at 313, 515 S.E.2d at 254. Although one of the victims backed from the living room into the kitchen before lying down, the Court held that the evidence was insufficient to establish a removal separate from the robbery when the robbers did not order the victim to move to the kitchen, but rather only ordered him to "back up and get on the floor." *Id.* The evidence of restraint or removal was no greater in this case.

The State, however, points to *State v. Brice*, 126 N.C. App. 788, 486 S.E.2d 719 (1997), a decision rendered a year before *Beatty*. In *Brice*, one defendant was in the bedroom robbing two male victims, while a second robber was outside the house demanding money from another male victim. A third robber was in the living room with the female victim. The third robber threatened the woman with a gun and ordered her to lie face down on the floor, causing her to become ill. *Id.* at 790, 486 S.E.2d at 720. This Court explained in *Ross* that "[i]n *Brice*, our Court held that terrorizing the woman in the living room was not an inherent part of the robbery taking place in the bedroom." *Ross*, 133 N.C. App. at 314, 515 S.E.2d at 255. As the Court acknowledged in *Brice*, this terrorization was not necessary to carry out the robbery of either the victims in the bedroom or the victim outside the house. *Brice*, 126 N.C. App. at 791, 486 S.E.2d at 720. We believe, however, that this case more closely resembles *Beatty* and *Ross*.

*State v. Davidson*, 77 N.C. App. 540, 335 S.E.2d 518 (1985), *disc. review denied*, 315 N.C. 393, 338 S.E.2d 882 (1986), also relied upon by the State, is likewise inapposite. In *Davidson*, the defendants entered a retail store, and, at gunpoint, took the store's occupants from the front of the store to a dressing room in the rear of the store; bound their heads, arms, and legs; took their valuables; and then took cash and merchandise from the store. *Id.* at 541, 335 S.E.2d at 519. In upholding the kidnapping convictions, this Court concluded:

"Removal of the victims to the dressing room [where none of the stolen property was kept] thus was not an inherent and integral part of the robbery." *Id.* at 543, 335 S.E.2d at 520. The "removal" was the critical factor.

The State, however, points to this Court's statement in *Davidson* that the removal "was a separate course of conduct designed to remove the victims from the view of passersby who might have hindered the commission of the crime." *Id.* The State contends that the conduct in this case necessarily must have been for the same purpose. In making this argument, the State overlooks the fact that there must still have been "a separate course of conduct." *Id.*

In this case, in contrast to *Davidson*, no removal occurred. The only conduct presented by the State as being apart from the robbery was the guarding of victims with a gun while face down on the floor. While the removal of the victims was not necessary to the robbery in *Davidson*, both the use of the firearm and the presence of the individual victims were necessary to the robbery with a dangerous weapon conviction. Under N.C. Gen. Stat. § 14-87(a) (2007), a person is guilty of robbery with a dangerous weapon if that person, "having in possession or with the use or *threatened use of any firearms* or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or *from any place of business*, residence or banking institution or any other place *where there is a person or persons in attendance* . . . ." (Emphasis added.) Consistent with the statute, the State's indictments in this case alleged the threatened use of firearms and the taking of McDonald's property while the alleged kidnapping victims were present.

In sum, the State's evidence of kidnapping established only the elements of the crime of robbery with a dangerous weapon with the lone added component of the victims' being required to lie down on the floor. Under *Ripley*, that lone act is a mere technical asportation. As a result, unlike *Davidson*, the State presented no additional evidence of restraint, confinement, or removal beyond that necessary to commit the robbery.

We, therefore, hold that the evidence in the record is insufficient to support defendant's convictions for second degree kidnapping under *Fulcher*, and the trial court should have granted defendant's motion to dismiss those charges. Because we are vacating defendant's second degree kidnapping convictions, we do not address de-

fendant's additional arguments relating to those convictions. Defendant does not make any arguments on appeal regarding his robbery with a dangerous weapon conviction and thus, as to that conviction, we find no error.

Vacated in part; no error in part.

Judges WYNN and STEELMAN concur.