STATE OF NORTH CAROLINA v. ANTONIO LAMARQUISA RIPLEY

No. 489A05

(Filed 3 March 2006)

**Kidnapping— second-degree—asportation of robbery victims from an entranceway into a motel lobby—inherent part of robbery with dangerous weapon**

The Court of Appeals did not err by vacating defendant's four convictions of second-degree kidnapping arising from the asportation of robbery victims from an entranceway into a motel lobby during the commission of a robbery with a dangerous weapon, because defendant's actions constituted a mere technical asportation of the victims which was an inherent part of the commission of robbery with a dangerous weapon.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 172 N.C. App. ——, 617 S.E.2d 106 (2005), vacating nine of defendant's convictions for second-degree kidnapping and reversing and remanding in part judgments entered 19 March 2004 by Judge Jack W. Jenkins in Superior Court, Onslow County. Heard in the Supreme Court 13 December 2005.

*Roy Cooper, Attorney General, by M. Elizabeth Guzman, Assistant Attorney General, for the State-appellant.*

*Thomas R. Sallenger for defendant-appellee.*

BRADY, Justice.

This case requires us to determine whether the asportation of robbery victims from an entranceway into a motel lobby during the commission of a robbery with a dangerous weapon was an independent act legally sufficient to justify defendant's separate convictions of kidnapping. Because we find defendant's actions did not constitute a separate, complete act independent of the commission of the robbery with a dangerous weapon, we affirm the Court of Appeals' opinion.

## FACTUAL BACKGROUND

On 18 November 2003, defendant Antonio Lamarquisa Ripley was indicted by the Onslow County Grand Jury for fifteen counts of second-degree kidnapping, nine counts of robbery with a dangerous weapon, three counts of attempted robbery with a dangerous weapon, and one count of assault by pointing a gun. Defendant and four accomplices committed the alleged offenses during a series of robberies on or about 30 May 2003.

The facts of these offenses are described in detail in the Court of Appeals' opinion below. *State v. Ripley*, 172 N.C. App. ——, 617 S.E.2d 106 (2005). Thus, we highlight only the facts most relevant to a determination of the issue now under consideration—the asportation of four of the victims. The State's evidence presented at trial consisted of testimony from numerous robbery victims and two of defendant's four accomplices. This testimony tended to show the following: On 30 May 2003, defendant, then thirty-two years old, assembled a group of four accomplices—Jonathan Battle, Jamar McCarthur, Karon Joye, and Sekou Alexander—all of whom were under the age of eighteen. Defendant then transported the group from Wilmington to Jacksonville, North Carolina. The group committed their first robbery with a dangerous weapon at the Hampton Inn in Jacksonville sometime after 9:00 p.m.

Defendant then relocated the group to the Extended Stay America Motel, also located in Jacksonville. Defendant remained in the vehicle while McCarthur, Joye, and Alexander entered the motel's lobby and approached the front desk clerk, demanding and taking the motel's money at gunpoint. Rather than fleeing the motel, the robbers hid in the lobby and ordered the front desk clerk to return to her position. Moments later, as motel patrons entered the lobby, the robbers leapt from their hiding places and robbed the newly acquired victims at gunpoint. During this robbery, one of the accomplices observed Dennis and Tracy Long and Skylar and Adrian Panter walking through the parking lot toward the motel lobby entranceway.

The most critical facts to our analysis are the following: Tracy Long testified during trial that, as her husband was opening the door to the motel lobby, she observed individuals lying on the floor and, believing a robbery was taking place, she prevented her group from entering. As she attempted to turn her party away from the motel, one of the robbers ordered the Longs and the Panters at gunpoint to enter the lobby. Once inside, the Longs and the Panters were ordered to the

**STATE v. RIPLEY**

[360 N.C. 333 (2006)]

floor, searched, and robbed. The robbers recovered eight dollars from Tracy Long, the only individual carrying currency. Defendant and his accomplices fled the scene, and law enforcement eventually apprehended the perpetrators.

At the close of the State's evidence, defendant made numerous motions, including one to dismiss all second-degree kidnapping charges. The trial court denied this motion. Defendant offered no evidence. After being instructed by the trial court, the jury deliberated and on 19 March 2004 returned verdicts of guilty for fifteen counts of second-degree kidnapping, seven of the nine counts of robbery with a dangerous weapon, and three counts of attempted robbery with a dangerous weapon.[1] Upon receiving these verdicts, the trial court consolidated defendant's charges and sentenced defendant in the presumptive range to four consecutive prison terms of 117 to 150 months.

Defendant appealed the trial court's denial of his motion to dismiss nine of his fifteen second-degree kidnapping charges.[2] In a divided decision, the Court of Appeals reversed the trial court's denial of defendant's motion to dismiss the nine kidnapping charges and vacated these convictions. A separate opinion concurring in part and dissenting in part found no error as to four of defendant's appealed kidnapping convictions, determining the convictions pertaining to the Longs and the Panters were separate offenses.

On 6 September 2005, the State sought a temporary stay, which was allowed on 6 September 2005, petitioned for writ of supersedeas, which was allowed on 6 October 2005, and filed its notice of appeal based upon a dissent. Therefore, pursuant to Rule 16(b) of the North Carolina Rules of Appellate Procedure, the scope of our review is restricted to the Court of Appeals' reversal of the four second-degree kidnapping charges addressed in the dissenting opinion.

## HISTORICAL BACKGROUND

Kidnapping has been a recognized crime tracing back to the earliest Judeo-Christian law. *See Exodus* 21:16 (Holman Christian Standard). English common law defined kidnapping as "the forcible abduction or stealing away of a man, woman, or child, from their own country, and sending them into another." William Blackstone, 4 *Commentaries* *219.

---

1. The State dismissed the charge of assault by pointing a gun.

2. Defendant did not contest six of his second-degree kidnapping convictions.

Some federal courts, considering the separate states as jurisdictions foreign to each other for the purpose of kidnapping, incorporated the English common law definition of kidnapping by modifying the offense to include the asportation of an individual across state lines as well as across international boundaries. *See, e.g., Collier v. Vaccaro*, 51 F.2d 17, 19 (4th Cir. 1931) ("The gist of the [kidnapping] offense is the forcible carrying out of the state . . . ."); *Gooch v. United States*, 82 F.2d 534, 537 (10th Cir.) ("[K]idnapping at common law means to forcibly abduct a person and to carry him from one state into another state . . . ."), *cert. denied*, 298 U.S. 658 (1936). So, too, did Congress, in its enactment of the Federal Kidnapping Act in 1932. 18 U.S.C. § 408(a) (1932) (currently codified at 18 U.S.C. § 1201 (2000)). The Act, often referred to as "The Lindbergh Law" because its enactment came as a result of the mysterious disappearance of Charles Lindbergh's infant son, currently follows the English common law by stating: "Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when—(1) the person is willfully transported in interstate or foreign commerce . . . [,]" shall be guilty of kidnapping. 18 U.S.C. § 1201(a) (2000).

## THE EVOLUTION OF KIDNAPPING IN NORTH CAROLINA

North Carolina did not codify any criminal acts of taking an individual against his or her will until 1879, when the General Assembly made criminal the act of abducting children. 1 N.C. Code of 1883, § 973 (1883). Noteworthily, the General Assembly did not designate this offense "kidnapping" until 1901. Act of Mar. 14, 1901, ch. 699, sec. 1, 1901 N.C. Sess. Laws 923, 923. However, this statute did not specifically define the offense of kidnapping. Thus, in 1907 this Court defined "kidnapping to be 'false imprisonment aggravated by conveying the imprisoned person to some other place.' " *State v. Harrison*, 145 N.C. 295, 302, 145 N.C. 408, 417, 59 S.E. 867, 870-71 (1907) (quoting 2 Joel Prentiss Bishop, *The New Criminal Law* § 750 (8th ed. 1892)). This definition of kidnapping excluded the English common law's requirement of asportation to another country. The common law definition of kidnapping evolved in the state's jurisprudence over the years, eventually being defined as "the unlawful taking and carrying away of a human being against his will by force or fraud or threats or intimidation; or to seize and detain him for the purpose of so carrying him away." *State v. Ingland*, 278 N.C. 42, 50, 178 S.E.2d 577, 582 (1971) (emphasis omitted).

**STATE v. RIPLEY**

[360 N.C. 333 (2006)]

The offense of kidnapping, as it is now codified in N.C.G.S. § 14-39, did not take form until 1975, when the General Assembly amended section 14-39 and abandoned the traditional common law definition of kidnapping for an element-specific definition.[3] The 1975 amendment to N.C.G.S. § 14-39 thus defined kidnapping as the unlawful confinement, restraint, or removal from one place to another of any person sixteen years of age or over without that person's consent for the purpose of obtaining a ransom, holding the victim hostage, facilitating the commission of a felony or flight after the commission of the felony, or for doing serious bodily harm to or terrorizing the victim. N.C.G.S. § 14-39(a) (1975). In 1978, this Court recognized "it is clear that the Legislature intended to change the law [of kidnapping]" with its 1975 amendment to N.C.G.S. § 14-39 and, therefore, rejected further use of the North Carolina common law definition of kidnapping. *State v. Fulcher*, 294 N.C. 503, 522, 243 S.E.2d 338, 351 (1978). However, this Court in *Fulcher* also perceived that with this new definition came the potential for a defendant to be prosecuted twice for the same act. Accordingly, this Court noted:

It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. . . . [W]e construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

*Id.* at 523, 243 S.E.2d at 351. Additionally, this Court noted that more than one criminal offense can grow out of the same criminal transac-

---

3. The element-specific definition enacted by the General Assembly is similar to that found in the Model Penal Code, which states:

A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:

. . . .

(b) to facilitate commission of any felony or flight thereafter;

. . . .

A removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat or deception . . . .

Model Penal Code § 212.1 (1960)

tion, but specifically held "the restraint, which constitutes the kidnapping, [must be] a separate, complete act, independent of and apart from the other felony." *Id.* at 524, 243 S.E.2d at 352; *see also State v. Beatty*, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998) (noting "a person cannot be convicted of kidnapping when the only evidence of restraint is that 'which is an inherent, inevitable feature' of another felony such as armed robbery") (quoting *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351).

Further, in *State v. Irwin*, this Court clarified the separate act requirement by holding the defendant's asportation of an employee at knife-point from the front to the rear of a pharmacy to open the safe and obtain drugs was "an inherent and integral part of the attempted armed robbery," and thus such asportation was legally insufficient to convict the defendant of a separate charge of kidnapping. 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981) ("To accomplish defendant's objective of obtaining drugs it was necessary that [one of the employees] go to the back of the store . . . and open the safe."). The Court also noted that the defendant did not expose the victim "to greater danger than that inherent in the armed robbery itself, nor is [the victim] subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *Id.*; *see also State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (explaining, "[t]he key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping 'exposed [the victim] to greater danger than that inherent in the armed robbery itself'") (quoting *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446). Accordingly, because the defendant's moving of the victim was "a mere technical asportation," this Court found the defendant's actions could not justify a separate conviction of kidnapping. *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446; *see also* Rollin M. Perkins, *Criminal Law*, ch. 2, § 7(A)(1), at 178 (2d ed. 1969) ("It has been held, quite properly, that where movement is merely incidental to an assault the prosecution must be for that offense and not for kidnapping.").[4]

4. A number of jurisdictions similarly define kidnapping and require the act constituting kidnapping to be a separate act which is not an inherent part of any other felony committed. *See United States v. Seay*, 60 M.J. 73, 80-81 (2004) (listing a number of factors to consider in determining whether asportation of a victim is "more than an incidental or momentary detention"); *People v. Rayford*, 9 Cal. 4th 1, 12, 884 P.2d 1369, 1374 (1994) ("Kidnapping for robbery, or aggravated kidnapping, requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself."); *Carron v. State*, 427 So. 2d 192, 193 (Fla. 1983) ("[W]e hold that in order for a person to be convicted of kidnapping with intent to commit or

Thus, as it stands today, and as it relates to the case at hand, N.C.G.S. § 14-39 defines kidnapping as:

(a) Any person who shall unlawfully confine, restrain, or **remove from one place to another,** any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony . . . .

N.C.G.S. § 14-39(a) (2005) (emphasis added).

## **APPLICATION OF OUR JURISPRUDENCE**

While the trial court's findings of fact are conclusive on appeal if supported by competent evidence, the trial court's conclusions of law are reviewed *de novo* by this Court. *State v. Hyatt,* 355 N.C. 642, 653, 566 S.E.2d 61, 69 (2002) (citing *State v. Barber,* 335 N.C. 120, 129, 436 S.E.2d 106, 111 (1993), *cert. denied,* 512 U.S. 1239 (1994)), *cert. denied,* 537 U.S. 1133 (2003). In accordance with *stare decisis,* we affirm the Court of Appeals' decision holding defendant cannot be convicted of second-degree kidnapping with regards to the Longs and the Panters.

---

facilitate the commission of another felony the offending movement or confinement must not be slight, inconsequential, and merely incidental to the other felony; must not be of the kind inherent in the nature of the other crime; and must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."); *People v. Enoch,* 122 Ill. 2d 176, 197, 522 N.E.2d 1124, 1135 (stating the court's acceptance of the logic that "an aggravated kidnapping conviction should not be sustained where the asportation or confinement may constitute only a technical compliance with the statutory definition but is, in reality, incidental to another offense"), *cert. denied,* 488 U.S. 917 (1988); *People v. Wesley,* 421 Mich. 375, 388, 365 N.W.2d 692, 696-97 (1984) (listing the elements of the crime of kidnapping to include "an asportation of the victim which is not merely incidental to an underlying crime *unless* the crime involves murder, extortion or taking a hostage. Asportation incidental to these types of crimes is sufficient asportation for a kidnapping conviction."); *People v. Riley,* 70 N.Y.2d 523, 532, 517 N.E.2d 520, 525 (1987) (holding the defendant's actions in placing his victim in the trunk of his car and driving around for approximately three hours went "well beyond the robbery and constituted the independent crime of kidnapping"); *State v. Fuller,* 172 S.W.3d 533, 536 (Tenn. 2005) ("[A] separate kidnapping conviction violates due process when 'the confinement, movement, or detention is essentially incidental to the accompanying felony' and not 'significant enough in and of itself to warrant independent prosecution.' ") (quoting *State v. Anthony,* 817 S.W.2d 299, 305, 306 (Tenn. 1991)).

STATE v. RIPLEY

[360 N.C. 333 (2006)]

To convict defendant of second-degree kidnapping of the Longs and the Panters, the State was required to prove beyond a reasonable doubt defendant, acting by himself or acting in concert, confined, restrained, or removed the victims from one place to another for the purpose of facilitating the commission of a felony. N.C.G.S. § 14-39(a), (a)(2).

Additionally, we hold a trial court, in determining whether a defendant's asportation of a victim during the commission of a separate felony offense constitutes kidnapping, must consider whether the asportation was an inherent part of the separate felony offense, that is, whether the movement was "a mere technical asportation." If the asportation is a separate act independent of the originally committed criminal act, a trial court must consider additional factors such as whether the asportation facilitated the defendant's ability to commit a felony offense, or whether the asportation exposed the victim to a greater degree of danger than that which is inherent in the concurrently committed felony offense.

Following the analysis in *Irwin*, we conclude the asportation of the Longs and Panters from one side of the motel lobby door to the other was not legally sufficient to justify defendant's convictions of second-degree kidnapping. The moment defendant's accomplice drew his firearm, the robbery with a dangerous weapon had begun. The subsequent asportation of the victims was "a mere technical asportation" that was an inherent part of the robbery defendant and his accomplices were engaged in. *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446.

The State argues defendant's asportation of the Longs and the Panters both facilitated the commission of robbery with a dangerous weapon and exposed the victims to a greater degree of danger than that inherent in the robbery with a dangerous weapon. Defendant asserts the opposite, stating the asportation had no effect on defendant's ability to complete the robbery with a dangerous weapon. Further, defendant argues the amount of danger to which the victims were exposed never exceeded the degree of harm inherent in the commission of robbery with a dangerous weapon.

While these contentions from both parties are not without merit, they are unnecessary considerations for our analysis. Because we find defendant's asportation of the victims to be a "mere technical asportation" which is an inherent part of the commission of robbery with a dangerous weapon, we cannot under our jurisprudence uphold

defendant's convictions of second-degree kidnapping as to the Longs and the Panters.

As defendant's actions constituted only a "mere technical asportation" of the victims which was an inherent part of the commission of robbery with a dangerous weapon, defendant cannot be convicted of the separate crime of second-degree kidnapping. Accordingly, we affirm the Court of Appeals' decision vacating defendant's four convictions of second-degree kidnapping.

AFFIRMED.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.