STATE OF NORTH CAROLINA
v.
DWIGHT LEE FORNEY, II.
No. COA07-330
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Douglas W. Corkhill, for the State.
C. Scott Holmes for defendant.
ELMORE, Judge.
Dwight Lee Forney (defendant) appeals from judgments entered after a jury found him guilty of second degree kidnapping and robbery with a dangerous weapon. We find no error.
Prior to trial, the State filed a motion to join the trials of defendant and Fredrick Cason Pratt (Pratt), alleging that each "is individually guilty of each offense charged based on the theories of acting in concert or aiding and abetting." Defendant objected to the State's motion for joinder and filed a motion to sever the defendants' trial. The trial court allowed the State's motion for joinder.
The State's evidence at trial tended to show that in the early morning hours of 22 July 2006, Marcus Archie was driving two friends from the parking lot of Club Atlantis to another parking lot when two men approached the car. The man armed with a gun, Pratt, walked up to the driver's side of the car and pointed the gun at Archie. Defendant, who did not have a gun, stood by the passenger door. Archie and the two passengers were ordered out of the vehicle and they complied. Pratt told Archie to empty his pockets. Archie took out his driver's license, cell phone, and debit card and dropped them to the ground. Pratt picked up the debit card and ordered Archie to pick up the cell phone and license. Pratt then walked to the other side of the car, where defendant and the two passengers stood. Pratt said, "where your money at[,]" then hit one of the passengers in the head with the gun. Pratt turned to Archie and said, "get back in the car, you're about to drive us around." Defendant sat in the back passenger seat and Pratt sat in the front passenger seat. Pratt ordered Archie to drive to the bank. During the drive, Pratt told Archie that the gun was loaded and defendant said, "this is real." Pratt hit Archie in the head with the gun after Archie drove past the bank.
Upon arriving at the bank, Pratt asked Archie for the debit card. Archie reminded Pratt that the debit card was taken from him at the parking lot. Defendant searched the back of the car for the debit card while Pratt searched the front of the car, but they were unable to find it. Pratt told Archie to "[p]ull away from here. You going to drive us somewhere." Pratt struck Archie's head with the gun four or five more times, resulting in an open wound that required five stitches. Archie drove back to Club Atlantis as Pratt requested. When they arrived at the club and no one was there, Pratt told Archie to call and find out where his two friends were. The two friends related to Archie that they were at a Texaco station. Pratt told Archie, "go to the place where [your friends are]. . . . We going to get your friends now." Pratt then took Archie's gold teeth, earrings, and a CD, and handed the items back to defendant. As Archie drove to the Texaco station, the police stopped the vehicle. The two friends walked over to the scene and identified defendant and Pratt as the robbers.
After the State rested, defendant renewed his motion to sever, which the trial court denied. Defendant testified at trial that Pratt had pointed the gun at him earlier that evening and demanded that defendant accompany him to Club Atlantis. Defendant testified that he was an unwilling participant in the robbery; that Pratt ordered him, along with Archie, to get into the car; that he was afraid of Pratt; and that he had asked Pratt to let him out of the car, but Pratt ignored him. Defendant further testified that Pratt tossed Archie's gold teeth and earrings into the back seat and did not hand the items to him.
Pratt testified that when he approached the car in the Club Atlantis parking lot, he told Archie that someone was trying to kill him and to get them out of there. Pratt denied robbing Archie, denied going to the bank, and could not explain how the earrings, gold teeth, and CD got into the back seat of the car. He also denied pointing a gun at defendant and did not recall defendant asking to go home.
The trial court denied defendant's motion to sever at the close of all the evidence. Upon a finding of defendant's guilt, the trial court sentenced him to active terms of imprisonment. Defendant appeals.
Defendant first contends that the trial court erred by granting the State's motion for joinder and denying his motion for severance. Defendant asserts that he and Pratt had antagonistic defenses and, therefore, the trial should have been severed. We disagree.
N.C. Gen. Stat. § 15A-927(c)(2) requires the trial court to deny joinder of the defendants for trial whenever it is necessary to promote or achieve a fair determination of guilt or innocence. N.C. Gen. Stat. § 15A-927(c)(2) (2005). "Whether defendants should be tried jointly or separately [] is a matter addressed to the sound discretion of the trial judge." State v. Rasor, 319 N.C. 577, 581, 356 S.E.2d 328, 331 (1987) (citing State v. Slade, 291 N.C. 275, 229 S.E.2d 921 (1976)). "A trial court's ruling on such questions of joinder or severance, however, is discretionary and will not be disturbed absent a showing of abuse of discretion." State v. Carson, 320 N.C. 328, 335, 357 S.E.2d 662, 666-67 (1987).
Our Supreme Court has stated:
[T]he existence of antagonistic defenses alone does not necessarily warrant severance. The test under section 15A-927(c)(2) is whether the conflict in the defendants' respective positions at trial is such that, considering all of the other evidence in the case, they were denied a fair trial. Thus the focus is not on whether the defendants contradict one another but on whether they have suffered prejudice.
Rasor, 319 N.C. at 582-83, 356 S.E.2d at 332 (internal citations omitted). Here, Pratt's defense was not antagonistic to defendant. Pratt's defense was that a robbery did not take place. Pratt did not make any assertion regarding defendant's guilt or implicate defendant. Defendant suffered no prejudice by Pratt's defense. We hold that the trial court did not abuse its discretion in overruling defendant's objection to the joinder of these trials.
Defendant next contends that the trial court erred by not dismissing the kidnapping charge. He asserts that the restraint alleged in the kidnapping charge was an inherent part of the robbery with a dangerous weapon. Specifically, defendant argues that the restraint of Archie was a "mere technical asportation" and defendant's conviction on both charges violates his constitutional protection from double jeopardy. We disagree.
The standard for ruling on a motion to dismiss "is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." State v. Lynch, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). Substantial evidence is that relevant evidence which "a reasonable mind might accept as adequate to support a conclusion." State v. Patterson, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585 (1994). In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, "and the State is entitled to all reasonable inferences which may be drawn from the evidence." State v. Davis, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). "Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." State v. King, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996).
N.C. Gen. Stat. § 14-39 defines kidnapping, in relevant part, as:
(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
(1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or
(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony . . . .
N.C. Gen. Stat. § 14-39 (2005). "One who . . . by the threatened use of a deadly weapon, is restricted in his freedom of motion, is restrained within the meaning of this statute." State v. Fulcher, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). "[A] person cannot be convicted of kidnapping when the only evidence of restraint is that 'which is an inherent, inevitable feature' of another felony . . . ."State v. Beatty, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998) (quoting Fulcher, 294 N.C. at 523, 243 S.E.2d at 351). The court may consider whether the defendant's acts place the victim in greater danger than is inherent in the other offense, or subject the victim to the kind of danger and abuse that the kidnapping statute was designed to prevent. State v. McNeil, 155 N.C. App. 540, 546, 574 S.E.2d 145, 149 (2002). The court also considers whether defendant's acts "cause additional restraint of the victim or increase the victim's helplessness and vulnerability." State v. Smith, 359 N.C. 199, 213, 607 S.E.2d 607, 618, cert. denied, 546 U.S. 850, 163 L. Ed. 2d 121 (2005).
Our Supreme Court recently considered under what circumstances the movement of victims in a robbery or attempted robbery is a mere technical asportation. State v. Ripley, 360 N.C. 333, 340, 626 S.E.2d 289, 293-94 (2006). In Ripley, the evidence showed that the victims were ordered at gunpoint to enter the hotel lobby, and once inside, were ordered to the floor, searched, and robbed. The Court concluded that the "asportation of the [victims] from one side of the motel lobby door to the other was not legally sufficient to justify defendant's convictions of second-degree kidnapping." Id. at 340, 626 S.E.2d at 294.
However, in State v. Davidson, 77 N.C. App. 540, 543, 335 S.E.2d 518, 520 (1985), this Court considered whether there was sufficient evidence of kidnapping when victims of a robbery were forced to walk from the front of the store to dressing rooms in the rear, before the store and the victims were robbed. Id. The Court noted that as none of the property that was the object of the robbery was kept in the dressing room, removal of the victims was not an inherent and integral part of the robbery, but rather was done to remove the victims from view. Id. at 543, 335 S.E.2d at 520.
Here, the movement of Archie from the Club Atlantis parking lot to the Texaco gas station after Archie's gold teeth, earrings, and CD were taken was not necessary to commit the robbery. Rather, Archie was ordered to drive defendant and Pratt around so that they could then rob Archie's friends. Further, Archie being confined to the car resulted in Archie being struck on the head and requiring stitches. This additional restraint increased Archie's helplessness and vulnerability. Therefore, taking the evidence in the light most favorable to the State, a jury could properly infer that defendant and Pratt's restraint of Archie was not an inherent part of the robbery. The trial court properly denied defendant's motion to dismiss the kidnapping charge. This assignment of error is overruled.
Finally, defendant contends that the trial court erred by not declaring a mistrial ex mero motu when he had an emotional outburst on the witness stand. While testifying on direct examination, defendant started crying and stated, "My co-defendant just threatened me." The trial judge then stated, "Sustained. Disregard that, ladies and gentlemen." On appeal, defendant argues that the comment, although struck, was so prejudicial as to require a mistrial.
N.C. Gen. Stat. § 15A-1063 provides: "Upon . . . his own motion, a judge may declare a mistrial if: (1)[i]t is impossible for the trial to proceed in conformity with law . . . ." N.C. Gen.Stat. § 15A-1063 (2005). "This statute allows a judge . . . to grant a mistrial where he could reasonably conclude that the trial will not be fair and impartial." State v. Lyons, 77 N.C. App. 565, 566, 335 S.E.2d 532, 533 (1985). "An order of a mistrial on a motion of the court is 'addressed to the sound discretion of the trial judge, and his ruling on the motion will not be disturbed on appeal absent a gross abuse of that discretion.'" Id. at 566, 335 S.E.2d at 533-34 (quoting State v. Malone, 65 N.C. App. 782, 785, 310 S.E.2d 385, 387 (1984)).
Here, the trial court immediately issued curative instructions by directing the jury to disregard defendant's comment. Further, defendant now attempts to cite as error the admission of his own comment during direct examination. However, "[a] defendant may not complain of prejudice 'resulting from [his] own conduct.'" State v. Gay, 334 N.C. 467, 485, 434 S.E.2d 840, 850 (1993) (citation omitted); N.C. Gen. Stat. § 15A-1443(c) (2005). "Such 'invited error' does not merit relief." Gay, 334 N.C. at 485, 434 S.E.2d at 850 (citation omitted). The trial court therefore did not abuse its discretion in failing to declare a mistrial ex mero motu. This assignment of error is overruled.
No error.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).