STATE OF NORTH CAROLINA v. MICHELLE ANITA COUSAR

No. COA07-850

(Filed 3 June 2008)

**1. Constitutional Law— double jeopardy—kidnapping and other crimes—restraint or force against person**

There were no double jeopardy implications that arose from convictions for second-degree kidnapping, first-degree burglary, and felonious larceny because restraint or force against a person was not an inherent element of burglary or larceny. Judgment was arrested on a common law robbery charge.

**2. Criminal Law— multiple crimes—instructions—intervention of counsel**

There was no plain error when the trial court requested both counsel to intervene rather than allow him to misinstruct the jury on a complex charge, the court confused the underlying felony in giving the kidnapping instruction, and the prosecutor intervened. Defendant did not demonstrate how the claimed error so influenced the jury that a different result would otherwise have been reached.

**3. Appeal and Error— preservation of issues—no offer of proof**

Defendant did not preserve for appellate review the sustaining of the State's objection to a certain question where she

did not make an offer of proof and the answer to the question was not readily apparent from the context.

**4. Evidence— prior bad acts—admission to prove motive, knowledge, absence of mistake—limiting instruction**

The trial court did not err by allowing evidence of prior bad acts in a prosecution for burglary, larceny, kidnapping and other crimes against a blind woman. The evidence of defendant's prior conduct was admissible under Rule 404(b) of the Rules of Evidence to prove motive, intent, knowledge, and absence of mistake, and it cannot be said that its admission or the limiting instructions were erroneous or influenced the jury such that a different verdict would have been reached otherwise.

**5. Sentencing— probationary terms—concurrent—consecutive sentences suspended**

There was no error in sentencing defendant where defendant contended that he was given consecutive probationary sentences. The court properly gave defendant consecutive sentences that were suspended with concurrent probationary periods.

**6. Constitutional Law— ineffective assistance of counsel—no prejudice**

The merits of an ineffective assistance of counsel claim were not reached on appeal where defendant acknowledged that she could not satisfy the prejudice prong of the test.

Appeal by defendant from judgments entered 25 January 2007 by Judge Clifton W. Everett, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 12 December 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Charles E. Reece, for the State.*

*Charns & Charns, by M. Alexander Charns, for the defendant-appellant.*

STEELMAN, Judge.

The trial court did not err in its evidentiary rulings, in instructing the jury, or in entering judgment on the jury's second-degree kidnapping verdict where the State proved restraint beyond that inherent in the underlying felony. The court did not err in sentencing defendant to consecutive sentences that were suspended with concurrent probationary periods.

STATE v. COUSAR

[190 N.C. App. 750 (2008)]

## I. Factual and Procedural Background

The evidence at trial tended to show that, shortly before midnight on 9 April 2006, Amanda Rush (hereinafter "Rush") heard knocking at her apartment door. Rush, who is legally blind, at first ignored the knocking, but when it continued, she got out of bed and asked who was at the door. A man's voice responded "Rich" and asked for Rush by name. Believing it might be a co-worker, Rush opened the door and briefly spoke with the man. A second person, who never spoke, entered the apartment during the conversation. Rush realized that she did not know these people, and the man finally said that he had the wrong address. As the strangers left, Rush attempted to close the door. Instead, one of the strangers pushed the door back open, pushed Rush three or more feet into the apartment, pushed her to the floor, and held her down with a hand over her mouth. He asked if she had any money, and removed his hand long enough for her to answer "no." He told her to be quiet. When she cooperated, he released her, and she moved to a recliner a few feet away.

The two intruders took a DVD player, a cellphone, and her wallet. Shortly thereafter, defendant Michelle Cousar used one of the two credit cards in Rush's wallet for purchases at a local grocery store and gas station, obtaining $20 in cash and gasoline in the amounts of $25, $5.32, and $20.01.

When questioned by police, Rush mentioned that defendant was a former co-worker who had previously tricked her out of money in an ATM transaction. Defendant and two male suspects, including defendant's boyfriend, Avery Holly, were subsequently arrested. All three co-defendants admitted to the crime but denied being inside the apartment. Each co-defendant identified the other two as the persons who went inside the apartment and stole Rush's property. In a voluntary statement to police, defendant admitted "I told them where Amanda Rush [lived.] . . . I did attempt to use the credit card."

Defendant was indicted for common law robbery; first-degree burglary, larceny after breaking and entering, and second-degree kidnapping; and financial card theft plus four counts of financial card fraud.

The jury returned guilty verdicts on all charges. The trial court entered four judgments, arresting judgment on the common law robbery charge, and sentenced defendant to: 96-125 months im-

prisonment on the first-degree burglary conviction; 46-65 months imprisonment on the second-degree kidnapping charge, to begin at the expiration of the burglary sentence; 11-14 months (suspended for 36 months with supervised probation) on the larceny charge, and· 8-10 months (also suspended) on the financial card charges, to run at the expiration of the larceny sentence. Defendant appeals.

## II.  Analysis

### A.  Kidnapping Charge: *Fulcher* Issue

[1] In defendant's first argument, she contends that the trial court erred in failing to arrest judgment on the kidnapping charge because any restraint of Rush was inherent in the crimes of robbery and burglary. We disagree.

Defendant cites but one case, *State v. Ripley*, 360 N.C. 333, 626 S.E.2d 289 (2006), in support of her argument. In that case, a group of robbers entered the lobby of a motel and robbed the front desk clerk at gunpoint. Motel patrons entered the lobby during the robbery. Some of the patrons were ordered at gunpoint, in the course of the robbery, to move from one side of a motel lobby door to the other side of the door. The Supreme Court, relying on the decision of *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981), held this to be a "mere technical asportation" that was an inherent part of the armed robbery. *Ripley*, 360 N.C. at 338, 626 S.E.2d at 293-94.

The analysis in *Ripley* is based upon the seminal case of *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978). The key holding in that case was as follows:

> It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

*Id.* at 523, 243 S.E.2d at 351.

Thus, the rationale of *Fulcher* and its progeny, including *Ripley*, is that a defendant may not be punished twice for the same conduct, *i.e.* restraint, under principles of double jeopardy.

Defendant argues in her brief that the element of restraint and force supporting the second degree kidnapping was inherent in the charge of common law robbery. We find no fault in defendant's argument in this regard. However, defendant fails to recognize that the trial court arrested judgment on the common law robbery charge. This action eliminated any possibility of the defendant being punished twice for the restraint involved in the common law robbery and second degree kidnapping.

Other than the second degree kidnapping charge, only the charge of common law robbery had as an inherent element of the offense the use of restraint or force against a person. The only force inherent in burglary or in larceny pursuant to a breaking and entering is forcible entry into the property, which was achieved when the intruders forced the door open and not by pushing Ms. Rush to the floor and holding her there. Thus, under the rationale of *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932), there are no double jeopardy implications that arose from the convictions for second degree kidnapping, first degree burglary, and felonious larceny. *See State v. Gardner*, 315 N.C. 444, 340 S.E.2d 701 (1986) (applying the *Blockburger* test to single prosecution situations).

This argument is without merit.

### B.  Jury Instructions

[2] In her second argument, defendant contends that she was unfairly prejudiced when the trial court deferred to the prosecutor and, in effect, permitted the prosecutor "to instruct the jury" on the second degree kidnapping charge. We disagree.

The record reflects that the trial court requested both counsel to intervene rather than to allow him to misinstruct the jury during a complex charge. Defendant assented to this request. When the trial court confused the underlying felony in administering the kidnapping instruction, the prosecutor intervened, as requested, to clarify. Because defense counsel raised no objection to the instructions at trial, we review this argument on a "plain error" basis, which requires defendant to show that the claimed error is so fundamental and prejudicial that a different verdict would have otherwise been reached. *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000).

A bare "assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." *Id.* at 636-37, 535 S.E.2d at 61. Although defendant claims "no adversarial fairness[,]" she fails to demonstrate how the claimed error so influenced the jury that a different verdict would otherwise have been reached. *Id.* This argument is without merit.

### C. Preservation of Evidentiary Issue

**[3]** In defendant's third argument, she contends that the trial court erred in sustaining the State's objection to testimony that her boyfriend would have killed her if she had not followed his orders. We disagree.

At trial, defendant raised an affirmative defense of duress. Defendant testified to an abusive relationship with co-defendant Holly, stating that he threatened her life and the lives of her family if she refused to cooperate and participate in the crime. Holly testified that: defendant did "basically whatever I told her to do;" he had frequently used physical means to induce compliance with his wishes; he had previously threatened to kill her; and she was afraid of him. He further testified that she used the credit cards at his direction. Defense counsel asked Holly "what would have happened to Michelle Cousar if she refused to cooperate with you?" The court sustained the State's objection, and defendant did not request a proffer of Holly's response for the record.

"In order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Ray*, 125 N.C. App. 721, 726, 482 S.E.2d 755, 758 (1997) (citations omitted). When the defendant assigns as error the exclusion of testimony, but has not made an offer of proof for the record of what the resulting testimony would be, this Court "cannot assess the significance of the evidence sought to be elicited[.]" *Id.*, 482 S.E.2d at 758-59. Holly's answer to the question is not readily apparent from the context within which the question was asked. N.C. Gen. Stat. § 8C-1, Rule 103(a)(2). We will not speculate as to what Holly's answer might have been. *See State v. Barton*, 335 N.C. 741, 749, 441 S.E.2d 306, 310-11 (1994). This argument is without merit.

### D. Rule 404(b): Evidence of Prior Bad Acts

**[4]** In her fourth argument, defendant contends that the trial court erred by allowing evidence of her prior bad acts. We disagree.

Ms. Rush testified to a previous incident in which, after agreeing to loan defendant $60, she allowed defendant to assist her with an automated withdrawal of $120, where defendant instead withdrew approximately $320. Outside the presence of the jury, the State proffered defendant's arrest warrant and plea transcript from that incident, arguing that, under Rule 404(b), the evidence was relevant to the financial card fraud charges to show motive, intent, knowledge, plan, absence of mistake, and identity. Defendant at first objected but then conceded that the evidence was within the ambit of 404(b) as long as a limiting instruction was provided.

When the State offered the warrant and transcript into evidence, defendant made no objection. At defendant's request, the court gave a limiting instruction prior to publication of the items to the jury. Defendant did not object to the introduction of the mug shot from her arrest for the instant charges. Nor did defendant object to the trial court's limiting instructions. We review this argument on a "plain error" basis. *Cummings*, 352 N.C. at 636, 535 S.E.2d at 61.

Defendant now contends that the limiting instruction regarding Ms. Rush's testimony was factually incorrect and damaging to her. In relevant part, the court instructed the jury:

"[Y]ou just heard Ms. Rush testify and evidence has been received tending to show that at an earlier time the defendant . . . well made an unauthorized transaction with Ms. Rush's credit card without her approval in exceeding what she told her to draw out, and this evidence was received specifically with reference to the four charges of financial transaction card fraud that I have previously told you about that occurred on or about the 10th day of April, 2006[.]

Defendant now claims that this instruction was unduly prejudicial because it erroneously instructed the jury that "Ms. Cousar had previously stolen money from Ms. Rush by trick using the victim's credit card." We note that defendant pled guilty to obtaining property by false pretenses in the earlier case. In the instant case, defendant admitted to attempted use of Rush's card and there was video evidence tending to show that she used the card. The evidence of defendant's prior conduct was admissible under N.C. R. Evid. 404(b) to prove motive, intent, knowledge, and absence of mistake, and we cannot say that its admission or the limiting instructions were erroneous or influenced the jury such that, without them, a different verdict would have been reached.

This argument is without merit.

## E. Sentencing Challenge

[5] In her fifth argument, defendant contends that the imposition of consecutive probationary sentences was reversible error. We disagree.

Defendant argues that the trial court imposed two consecutive terms of probation upon defendant, citing to *State v. Canady*, 153 N.C. App. 455, 570 S.E.2d 262 (2002). The State concedes that defendant is correct. Neither defendant nor the State are correct in their analysis. We hold that *Canady* is not controlling in this matter.

The trial court imposed consecutive active sentences for the first degree burglary (case 06 CRS 54052-51) and the second degree kidnapping (case 06 CRS 54052-53) convictions. The trial court then entered judgment on the felonious larceny conviction (case 06 CRS 54052-52). The sentence in the larceny conviction was to run at the expiration of the kidnapping sentence. This sentence was suspended and defendant was placed on probation for 36 months, with the probation to commence upon defendant's release from incarceration on the kidnapping convictions. A fourth judgment was entered upon the convictions for financial card theft and financial card fraud (case 06 CRS 54050-51). This sentence was to run at the expiration of the felonious larceny conviction. The judgment provided that the defendant was placed on probation for 36 months, and the court ordered compliance with the conditions of probation set forth in the felonious larceny judgment.

While the two probationary sentences were ordered to run consecutively, the two probationary judgments are devoid of any language that would suggest that the defendant was to have two consecutive terms of 36 months probation. In the absence of any specific language, the provisions of N.C. Gen. Stat. § 15A-1346 control and the period of probation "[i]f not specified, . . . runs concurrently." N.C. Gen. Stat. § 15A-1346 (2007). Our holding in *Canady* dealt only with consecutive periods of probation, not consecutive sentences that were suspended. This argument is without merit.

## F. Remaining Assignments of Error

[6] Finally, defendant preserves an argument that she received ineffective assistance of counsel in that her attorney failed to request recordation of jury selection, opening statements, and closing arguments. Because she acknowledges that she cannot satisfy the "prejudice" prong of the *Strickland* test, we do not reach the merits of this claim. *Strickland v. Washington*, 466 U.S. 668, 80 L. E. 2d 674 (1984)

(requiring defendant to show that counsel's performance was so seriously deficient that her Sixth Amendment rights were compromised and that the alleged deficiency prejudiced the defense to a degree that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different); *see also State v. Verrier*, 173 N.C. App. 123, 129-30, 617 S.E.2d 675, 679-80 (2005) (holding that, while "appellate counsel may be at a disadvantage when preparing an appeal for a case in which he did not participate at the trial level, . . . It is outside the realm of this Court's function as the judiciary to modify statutory law.")

The remaining assignments of errors asserted in the record on appeal, but not argued in defendant's brief, are deemed abandoned. N.C. R. App. P. 28(b)(6) (2007).

NO ERROR.

Judges McCULLOUGH and GEER concur.